UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIJAY SANGAR, M.D., Ph.D.<br>10208 Cross Haven Court<br>Rockville, Maryland 20850<br><br>     Plaintiff<br><br>  v.<br><br>FRANCIS HARVEY<br>Secretary of the Army<br>The Pentagon<br>Washington, D.C. 20530<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**
(Correction of Military Records – Administrative Procedures Act)

Plaintiff, by and through undersigned counsel Christopher A. Sterbenz, respectfully submits the following complaint:

### I. Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to one or more of the following grants of jurisdiction: the Administrative Procedure Act, 5 U.S.C. § 701; mandamus, 28 U.S.C. § 1361; declaratory judgment 28 U.S.C. § 2201; and habeas corpus, 28 U.S.C. § 2241. This case presents federal questions pursuant to 28 U.S.C. § 1331.

2. Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

### II. The Parties

3. Plaintiff is a resident of the State of Maryland. Until 2005, Plaintiff was a commissioned officer in the Regular Army.

4.      Defendant Francis Harvey is the Secretary of the Army, and is sued in his official capacity only.

### III.   Facts

5.      Plaintiff was commissioned an officer in the Medical Corps of United States Army in 1988. In 1994, he was promoted to the rank of Lieutenant Colonel, and at that time was commissioned as an officer in the Regular Army.

6.      Plaintiff holds a Ph.D. in mycology and an M.D. degree. At all times relevant to this case, plaintiff was board certified in nuclear medicine by the American Board of Nuclear Medicine. He has been licensed to practice medicine by the State of Missouri since 1988. That license has never been subject to adverse action.

#### a.   Onset of illness, 1997-2001

7.       In 1997, Lieutenant Colonel Sangar was diagnosed with Chronic Inflammatory Demyelinating Polyneuropathy (CIDP) an organic disease of the brain (not a mental illness) which interferes with cognitive functions in its victims. The organic disease was discussed at length in a medical evaluation contained within the proceedings of a Medical Evaluation Board held at Madigan Army Medical Center in 2001.

8.      The evaluation described LTC Sangar's condition: "Presently Dr. Sangar has evidence of an abnormal EMG with mild residual effects from the CIDP. He still has significant neuropsychological impairments and the diagnosis of Cognitive Disorder, NOS (Not Otherwise Specified). The Cognitive Disorder is chronic, stable, and not likely to improve. Unfortunately, there is no current treatment available for his cognitive disorder."

9. On May 24, 2001, based upon the extensive medical evaluation conducted by two psychiatrists and a neurologist, the Plaintiff was issued a permanent physical profile under the provisions of Army Regulation 40-501 on the basis of: 1) Cognitive Disorder NOS, Moderate; 2) Decreased Visual Acuity in the Left Eye; and 3) Cervical Spondylosis. The Profile required an assignment limitation as follows: "Cannot be assigned as a physician in the specialty of nuclear medicine given his Cognitive Disorder, NOS." This permanent profile followed a permanent withdrawal of Plaintiff's privileges to practice nuclear medicine, imposed by The Surgeon General, in 2000.

10. While the Plaintiff's profile and withdrawal of privileges was applicable to his service as a nuclear medicine physician, he was otherwise found capable of performing military duties and his continuance on active duty was "not medically contraindicated." He was retained on active duty.

11. Because of this illness, from 1998 through 2005, Plaintiff was assigned by the Army to duty as a "Physician/Tumor Registry Clerk" and "Medical Abstraction Physician" responsible for "abstracting medical records from Tumor Registry at Walter Reed Army Medical Center." This assignment, while medically-related, did not require that the Plaintiff hold "credentials" to practice nuclear medicine.

b. First elimination proceedings, 2002

12. On March 26, 2002, the Plaintiff was notified that he was subject to a "Show Cause" board under the provisions of Army Regulation 600-8-24 "based on a downward trend in your overall performance resulting in a consistent period of mediocre service and failure to properly perform assignments commensurate with your grade and experience. This is substantiated by your Officer Evaluation Reports. [OERs]"

3

13. A hearing before a board of officers convened on December 17, 2002 to consider whether the Plaintiff should be separated. The board made the following finding of fact: "LTC Sangar has some of the substandard performance of duty stated in the Memorandum of Initiation of Elimination, as follows: It is the opinion of the board that the cited downward trend in OERs from July 97 thru Nov 99 is potentially attributable to LTC Sangar's diagnosed CIDP. The two OERs covering the period Nov 99 thru Nov 01 do not address a downward trend, but address the fact that he is not performing as a Nuclear Medicine Physician. Furthermore, there is disagreement among Nuclear Medicine Experts concerning his qualifications."

14. The board unanimously voted to retain the Plaintiff in service, recommending that "LTC Sangar be retained in the service with reassignment with a period of supervision to assess his suitability to be credential and practice as a Nuclear Medicine Physician."

    c.    <u>Duty subsequent to first elimination proceedings, 2002-05</u>

15. The appointing authority approved the board's findings in early 2003, but the Plaintiff was never transferred from his assignment at WRAMC. He continued in his permanent assignment as a Medical Abstraction Physician at the WRAMC Tumor Registry. At no time subsequent to this assignment as a Medical Abstraction Physician was Plaintiff ever informed or required by his superiors in the Army that he must obtain "credentials" to practice nuclear medicine at WRAMC.

16. Such "credentials" were unnecessary to the performance of his assigned duty. Issuance of "credentials" is governed by Army Regulation 40-68. Paragraph 9-2 states that "Health care practitioners who function independently to initiate, alter, or

terminate a regimen of medical care must be privileged…. Members of the health care staff who function under a standard job description in the performance of their duties…do not require clinical privileges."

17. Plaintiff's 2002 OER shows, for example, that he successfully performed the administrative duties of a Medical Abstraction Physician at a time when he did not have medical clinical credentials. None were necessary; neither by job description nor by regulation.

18. In 2003, the Plaintiff was sent on temporary duty (TDY) to Madigan Army Medical Center to perform a brief period of training in nuclear medicine. This period extended from September 22, 2003 to December 2, 2003.

19. The Plaintiff was issued "credentials" by Madigan to practice as a nuclear medicine physician for the period September 22, 2003 through May 5, 2005. It is important for the purposes of this lawsuit to note that these credentials were never subsequently modified or revoked, and unlike his Tumor Registry assignment at WRAMC, were necessary to his TDY clinical medical duties at Madigan.

20. Memoranda related to Plaintiff's performance of duty noted that "we are all encouraged by your attention, cooperation and willingness to learn" (October 21, 2003 memo); "we are attempting to give him honest feedback on all the good things he is doing as a physician" (October 31, 2003 memo); "Dr. Cote stated that he has noticed a marked improvement in Dr. Sangar's skills" (November 13, 2003 memo). The final memorandum noted that the brief refresher course was truncated by two weeks because of the death of Plaintiff's father. Despite six years' illness and absence from the regular practice of medicine, it also noted that "LTC Sangar is a pleasant physician who availed

5

himself of the learning opportunities at MAMC. However, based on our observations of his performance, we do not feel that LTC Sangar can practice independently at this time." (January 23, 2004 memo).

21. Many physicians and other health care practitioners within the Army's health care system do not practice medicine independently. Indeed, Army Regulation 40-68, the governing regulation for health care providers, provides for an entire category of "supervised clinical privileges" for health care providers who, like LTC Sangar, have been away from medical practice for lengthy periods of time, and who are undergoing retraining. Army Regulation 40-68 Paragraph 7-15d. The typical period for such training and limited clinical credentialing is six months, not the 10 weeks of Plaintiff's case. Army Regulation 40-68, Para. 9-4e(2)(c).

22. Plaintiff's temporary duty at Madigan was terminated, and he was returned to WRAMC, which made no further effort to employ the Plaintiff as a nuclear medicine physician, and re-sent him to the WRAMC Tumor Registry where he resumed his six-years-long assignment as a Medical Abstraction Physician. After his return, the WRAMC Deputy Commander, Colonel Thomas M. Fitzpatrick, on April 16, 2004, requested the Plaintiff to voluntarily relinquish all clinical privileges. Plaintiff declined, but in any event, no clinical privileges were necessary to perform the purely administrative duties performed by LTC Sangar. Army Regulation 40-68, Para. 9-2.

        d.    Second elimination proceedings, 2004-05

23. On September 24, 2004, the Plaintiff received notice of a second initiation of elimination. The claim was:

6

>My action is based on the following specific reasons for elimination: On 23 January 2004, the Madigan Army Medical Center Nuclear Medicine Service and the Nuclear Medicine Consultant to The Surgeon General concluded that you could not practice independently as a nuclear medicine physician after completing your six weeks of refresher training and familiarization followed by four weeks of assessment of your potential to practice independently. This independent training and evaluation was performed following several years of performance problems at Walter Reed Army Medical Center.

24.     The letter cited, without identifying any specific instance: "Conduct or actions that result in the loss of a professional status, such as withdrawal, suspension or abandonment of professional license, endorsement, or certification that is directly or indirectly connected with or is necessary for the performance of one's military duties. (For AMEDD officers, this includes the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges.)"

25.     At all times after the time he was retained in service by the first show cause board in December 2002, the Plaintiff was fully licensed to practice medicine by his state board of medicine. In addition, the Plaintiff's administrative assignment as a Medical Abstraction Physician did not require continuing clinical practice privileges, but in any event, the Plaintiff's clinical practice privileges at Madigan Army Medical Center were valid until long after the second show cause board concluded.  In addition, no clinical practice privileges were suspended, limited or denied by WRAMC

26.     No mention was made in the Initiation of Elimination letter that the Plaintiff was not assigned as a nuclear medicine physician, and instead since 1999 has been assigned as a Medical Abstraction Physician.

7

27.     No notice was made in the Initiation of Elimination letter that the "several years of performance problems" at WRAMC had already been the subject of the December 2002 board which had retained the Plaintiff.

28.     No notice was made in the Initiation of Elimination letter that the Plaintiff was under a permanent profile for an organic brain disorder which had been caused by the CIDP illness.

29.     A second elimination board was held on March 28, 2005.  At the hearing, the Recorder submitted voluminous documentation concerning conduct that was already the subject of the 2002 show cause board.  Specifically, Government Exhibits 14, 15, 16, 17, 18, and 19 of the Record of Proceedings all outlined incidents and conduct of the Plaintiff which took place years before the first show cause board, held in December 2002.  These documentary exhibits included:

* 05 February 199 memorandum: Notice of suspension of LTC Sangar's clinical privileges.

* 19 April 1999 memorandum: Notice of suspension of LTC Sangar's clinical privileges.

* 03 November 1999 memorandum: Notice to LTC Sangar of the revocation of his clinical privileges.

* 03 November 1999 memorandum: LTC Sangar's receipt of the notice of the revocation of his privileges.

* 18 February 2000 memorandum: Notice of LTC Sangar informing him that his appeal of the revocation of his privileges is denied.

     *  30 November 2000 memorandum: Notice to LTC

  Sangar informing him that the MEDCOM Appeals

  Committee supports the decision to revoke his privileges.

30.  In addition to the documents he introduced, the Recorder solicited extensive testimony from witnesses concerning allegations of conduct by the Plaintiff which also were the subject of the December 2002 board. This testimony included:

    *  Ms. Susan Reed extensively referencing

  Plaintiff's 1999-2000 performance of duty.

    *  COL Thomas Fitzpatrick extensively testifying

  about Plaintiff's performance of duty from 1999-2002.

31.  After re-considering all of this evidence and testimony which had already been thoroughly considered by the December 2002 show cause board, the new show cause board in March 2005 voted to eliminate the Plaintiff from the service.

32.  The March 2005 board recommended an honorable discharge. However, the post-board processing by WRAMC added in the specification of "misconduct" to the Plaintiff's separation documents, making the Plaintiff ineligible for any separation pay for his nearly 18 years of continuous active federal service. No explanation exists in the record why this additional, highly pejorative description of Plaintiff's long service was added to his military records.

 e.  <u>Violation of administrative "double jeopardy" by the second elimination board and Army's failure to abide by its own regulations</u>

33.  The regulation governing officer discharges is Army Regulation 600-8-24, "Officer Transfers and Discharges." Specifically, Paragraph 4-4b. requires:

9

> [N]o officer will be considered for elimination for reasons stated in Paragraph 4-2 because of conduct that has been the subject of administrative elimination proceedings that resulted in a final determination that the officer should be retained in the Service. For purposes of this paragraph, an officer will be considered to have been the subject of elimination proceedings only if allegations against the officer were acted on by a Board of Inquiry convened under this chapter.[1]

34. In the elimination board, most of the government's documentary exhibits offered concerned conduct and performance of duty by the Plaintiff prior to the first show cause board held in December 2002 which decided to retain the Plaintiff in service. The testimony of all witnesses offered for testimony by the board recorder concerned, in substantial portion, conduct and performance of duty by the Plaintiff prior to December 2002.

35. In addition, the government failed to offer any documentary exhibits such as Officer Evaluation Reports for the years 2003, 2004, or 2005 that would demonstrate poor performance by the Plaintiff of his actual assigned duty as a Medical Abstraction Physician, for which no medical clinical credentials are required.

36. Army Regulation 600-8-24, Para. 4-1 makes it plain that the basis for elimination from the service may not be on such trifling grounds as set forth in the findings of the second show cause board:

> When an officer shows ineffective tendencies (especially if the officer is inexperienced) when practicable, he or she will be given another chance under another commander. The officer's ineffectiveness will be systematically recorded in documents that specify each period covered, duties observed, and defects noted. Recommendations for elimination action will not be based on generalities and

---

[1] There are three exceptions to this explicit policy, none of which are applicable to the Plaintiff's case. Army Regulation 600-8-24, Para. 4-4d.

10

        vague impressions. It is necessary to document, in writing, the precise reasons an officer is considered ineffective.

37.     The primary tool for documenting the performance of duty of an officer is the Officer Evaluation Report. OERs are governed by Army Regulation 623-105. Paragraph 1-8 of the regulation makes the Army's policy clear:

> (2) Although the OERS is a multi–functional system, its basic structure—
> *(a)* Allows the rater to give shape and direction to the rated officer's performance.
> *(b)* Provides a chain–of–command evaluation of an officer's performance and potential.
> *(c)* Allows the entire evaluation reporting process to be reviewed.
> (3) The primary function of the OERS is to provide information to DA for use in making personnel management decisions. This information is supplied to DA by the rating chain in the officer's assigned attached organization.
> *(a)* The information provided on the OER, combined with the Army's needs and individual officer qualifications, is used as a basis for personnel actions. Included are promotion, elimination, retention in grade, retention on active duty, reduction in force, command selection, school selection, assignment, specialty designation, and Regular Army (RA) integration.
> *(b)* To ensure that sound personnel management decisions can be made and that an officer's potential can be fully developed, evaluation reports must be accurate and complete. Each report must be a comprehensive appraisal of an officer's abilities, weaknesses, and potential. Reports that are either incomplete or fail to provide a realistic and objective evaluation make it difficult to determine an officer's true potential.
>
> \* \* \*
>
> *c. The evaluation reporting process.*
> (1) The OERS process is designed to—
> *(a)* Set objectives for the rated officer that support the organization's mission.
> *(b)* Review the rated officer's objectives and update them to meet current needs.

11

>   *(c)* Promote performance–related counseling to develop subordinates and better accomplish the organization's mission.
>   *(d)* Evaluate the rated officer's performance.
>   *(e)* Assess the rated officer's potential.
>   *(f)* Ensure a review of the entire process.

38. Appendix E of Army Regulation 623-105 makes it even more clear how the OER is the central personnel document of the Army's medical department:

> The OER has a unique purpose when used to evaluate the performance and potential of Medical Corps (MC), Dental Corps (DE), Veterinary Corps (VC), Army Nurse Corps (AN), Medical Specialist Corps (SP), Medical Service Corps (MS) resident, intern, and fellowship students in graduate health education. Therefore, it should be given primary emphasis in the evaluation process.

39. In Plaintiff's case, the documentary record of OERs shows that the Plaintiff's duty assignment was as a Medical Abstraction Physician from 1999 onwards. The absence of any OERs subsequent to the December 2002 show cause board's decision to retain the Plaintiff in service fails to establish any requirement for continuing medical clinical credentialing in nuclear medicine, which was the entire *raison d'etre* of the Plaintiff's elimination from the service.

   f.    <u>Appeal to the Army Board for Correction of Military Records (ABCMR)</u>

40. In 2005 the Plaintiff appealed his discharge for "misconduct" to the Army Board for Correction of Military Records, raising the same issues in this lawsuit. In August 2005, the ABCMR rejected Plaintiff's appeal, failing to even discuss the principal issue of the appeal, namely, the gross violation of administrative "double jeopardy."

41. By appealing to the ABCMR, plaintiff has exhausted all administrative remedies available to him which are necessary to the bringing of this suit.

## IV.    COUNT ONE
(Administrative Procedures Act)

Plaintiff reincorporates by reference the contents of the foregoing paragraphs, and further states:

42.    Defendant's failure to follow his own regulations, including but not limited to the violation of Defendant's administrative "double jeopardy" bar, his violation of regulations requiring specific, written evaluation of Plaintiff's performance of duty, as well as his wrongful discharge of the Plaintiff for "misconduct" is a legal wrong against Plaintiff, entitling him to judicial review under the Administrative Procedure Act, 5 U.S.C. §702.

## V.    COUNT TWO
(Correction of Military Records)

Plaintiff reincorporates by reference the contents of the foregoing paragraphs, and further states:

43.    The Army Board for Correction of Military Records' failure to provide relief to the Plaintiff on his appeal was arbitrary, capricious, and otherwise in violation of the Constitution, statute, regulation, and case law.  It should be reversed.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    That the Court enter judgment for him against Defendant:

a.    Declaring his discharge from the Army for "misconduct" to be unlawful;

b.    Reversing the decision of the Army Board for Correction of Military Records;

  c. Ordering that the Defendant remove from Plaintiff's military records his discharge for misconduct;

  d. Ordering that the Defendant reinstate the Plaintiff to active duty, retroactive to the date of his involuntary discharge; and

  e. Awarding to Plaintiff, against Defendant, payment of all of his costs and attorney fees incurred in this suit.

          Respectfully submitted,

          /s/_____
          Christopher A. Sterbenz
          Counsel for Plaintiff
          P.O. Box 126
          Vienna, Virginia  22183
          D.C. Bar No. 437722
          (703) 620-2313

November 21, 2006

```
JS-44
(Rev.1/05 DC)
```

# CIVIL COVER SHEET

C
06-2015
CKK

## I (a) PLAINTIFFS
Vijay Sangar, MD, PhD

## DEFENDANTS
Francis Harvey, Secretary of the Army

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Christopher A. Sterbenz
PO Box 126
Vienna, VA 22183
703-620-2313

CASE NUMBER   1:06CV02015
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: Administrative Agency Review
DATE STAMP: 11/28/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Correction of Military Records, 28 USC 1331, 2201; APA, 5 USC 701

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:  YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐   NO ☒   If yes, please complete related case form.

DATE November 28, 2006   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.