UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIJAY SANGAR, M.D., Ph.D. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) C.A. No.  06-2015 (CKK) |
| | ) |
| PETE GEREN | ) |
| Acting Secretary of the Army | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, through undersigned counsel, and hereby submits the following Reply Brief in support of his Motion for Summary Judgment.  Plaintiff's Motion, which contained a detailed Statement of Material Facts Not Subject to Dispute, was filed in this Court on March 5, 2007.  Defendant filed an Opposition to this motion on April 2, 2007, together with a separate document styled "Defendant's Response to Plaintiff's Statement of Facts."[1]

## I.        INTRODUCTION

The Plaintiff's Motion for Summary Judgment in this Administrative Procedures Act case outlined undisputed facts and the crystal-clear failure of the Defendant to adhere to his own regulations when he discharged the plaintiff for alleged "misconduct."

---

[1]        In the instant case, Defendant desired to and did file a consolidated brief containing not only his Opposition to the instant motion, but also a separate Motion for Summary Judgment of his own, together with a 404 page Administrative Record, on the same date.  Plaintiff's Reply will contain itself solely to the Defendant's arguments contained therein which were filed in opposition to Plaintiff's Rule 56 motion.  Plaintiff is scheduled to file a separate opposition to the Defendant's own Rule 56 motion on or before May 14, 2007.  Defendant's reply in support of his own motion is due to be filed by May 25, 2007.  See Scheduling Order at p. 2.

Defendant's Opposition, on the other hand, invites the Court to wade into the factual thicket of the facts below, by asking the Court to weigh evidence which not a part of the record which was before the Army Board for Correction of Military Records (ABCMR) which rendered the decision under challenge.  Courts are singularly unqualified to weigh the various facts and allegations which underlie the decision of the ABCMR under judicial review.[2]  Crane v. Sec'y of the Army, 92 F. Supp. 2d 155, 163 (W.D.N.Y 2000).

The dispositive cases are Frizelle v. Slater, 111 F.3d 172 (D.C. Cir. 1997), and Godwin v. United States, 338 F.3d. 1374 (Fed. Cir. 2003), each based upon the seminal case Engels v. United States, 678 F.2d 173 (Cl. Ct. 1982).  Based upon these guiding cases, the legal question for the Court is a simple one – has the Plaintiff identified a causal nexus between his discharge and the Defendant's confessed failure to follow his own regulations?  No drawing of facts or assessment of the credibility of evidence by this Court is necessary.  It is the Plaintiff's position that the Defendant's failure to follow his own regulations led to his illegal discharge for "misconduct."  Defendant's counter-argument is that the Court should find that the Plaintiff was really not a very good officer, and therefore his discharge is warranted, even though the Defendant failed to follow the law and his own regulations.  This is the case in a nutshell.

_____

[2]     The sum total of the Administrative Record before the ABCMR was provided in the first fifteen exhibits to Plaintiff's Motion for Summary Judgment.  The ABCMR did not seek from the Army an advisory opinion or documents, and the decision was rendered solely on the Plaintiff's application.  The Defendant's Administrative Record, insofar as it proffers documents which were not appended to the Plaintiff's ABCMR application, consists of documents which were not a part of the ABCMR's decisionmaking.

For example, the Defendant urges the Court to disregard the medical opinions of a board of Army physicians regarding Plaintiff's serious neurological illness, and urges the Court to instead rely upon the medical opinion of an infantryman that the Plaintiff suffered from no illness at all.  See n.5, infra.

## II.    MATERIAL FACTS NOT SUBJECT TO DISPUTE

Concurrent with his Motion for Summary Judgment filed March 5, 2007, Plaintiff identified forty material facts not subject to dispute.  In opposing the Motion for Summary Judgment, the Scheduling Order in this case specified that the "Court assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.  LCvR (7), 56.1."  See Scheduling and Procedures Order, entered March 27, 2007.

The Court's Scheduling Order cautioned the parties to "carefully review Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, et al., 101 F.3d 145 (D.C. Cir. 1996) on the subject of Local Rule LCvR 7…" Id.

It is the settled law of this Circuit that in a case such as the instant one, where each party files cross-motions for summary judgment, the burden is not only on Defendant to provide its own statement of material facts, but also to provide responses to the Plaintiff's Statement of Material Facts with supporting citations to the record.  SEC v. Banner Fund, Inc., 211 F.3d 602 (D.C.  2000). Failing this, the Plaintiff's Statement of Material Facts is considered admitted.  Id.  See also Gardels v. Central Intelligence Agency, 637 F.2d 770, 773 (D.C. Cir. 1980)(Fed. R. Civ. P. 56.1 "isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies pertinent parts of the record.");  Jackson, 101 F.3d at 151 (same).

Thanks to the requirements of Local Civ. R. 7 and Fed. R. Civ. P. 56.1, this Court is not "obligated to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [an] analysis and determination of what may, or may not,

be a genuine issue of material disputed fact." Twist v. Meese, 854 F.2d 1421, 1425 (D.C. Cir. 1988).

Defendant's Response to the Plaintiff's Statement of Facts was filed in opposition to the instant motion on April 2, 2007. In substantial measure, the Defendant admits the veracity and materiality of Plaintiff's proffered statement of undisputed facts. In the cases of Facts 9, 14[3], 20, 21, 22, 29, 35, 36, and 37, Defendant states that he "disagrees" with the proffered facts identified in Plaintiff's motion, but does not provide any citation to the record to support his disagreement. Without any citation to controverting documents of record, the facts proffered by the Plaintiff as Facts 9, 14, 20, 21, 22, 29, 35, 36, and 37 are deemed to be admitted. See Jackson, supra; SEC v. Banner Fund, supra.

In Plaintiff's Facts 8, 18, 23, 31, 32, 33, 34, and 39, the Plaintiff will herein address the Defendant's responses seriatim. In none of these "disputed" Facts does there appear to be a genuine dispute with the Plaintiff's Statement of Material Facts. In some cases the Defendant's objection is semantic, in others, the Defendant cites to documents which on their face do not support his objections to the Plaintiff's proffered facts.

**Plaintiff's background**

1. Plaintiff was commissioned an officer in the Medical Corps of United States Army in 1988. In 1994, he was promoted to the rank of Lieutenant Colonel, and at that time was commissioned an officer in the Regular Army. Plaintiff's Exhibit 16, p. 2.

---

[3]    In response to Fact 14, Defendant disagrees and cites to "AR 487-489." These documents do not exist in the Administrative Record, which totals only 404 pages. This is not a typographical error, as the documents contained in the Administrative Record at 87-89, 187-189, 287-289, or 387-389 – nor anywhere else in the Administrative Record - do not reference or support the Defendant's position. The Plaintiff's proffered Fact 14 is therefore uncontroverted and admitted.

2.      Plaintiff holds a Ph.D. in mycology and an M.D. degree.  In 2000, plaintiff was board certified in nuclear medicine by the American Board of Nuclear Medicine.  He has been licensed to practice medicine by the State of Missouri since 1988.  That license has never been subject to adverse action.  Plaintiff's Exhibit 11, p. 6.

**Plaintiff's illness**

3.      In 1997, Lieutenant Colonel Sangar was diagnosed with Chronic Inflammatory Demyelinating Polyneuropathy, (CIDP) an organic disease of the brain (not a mental illness) which interferes with cognitive functions in its victims.  The organic disease was discussed at length in a medical evaluation contained within the proceedings of a Medical Evaluation Board held at Madigan Army Medical Center in 2001.  Plaintiff's Exhibit 1.

4.      The evaluation described LTC Sangar's condition: "Presently Dr. Sangar has evidence of an abnormal EMG with mild residual effects from the CIDP.  He still has significant neuropsychological impairments and the diagnosis of Cognitive Disorder, NOS (Not Otherwise Specified).  The Cognitive Disorder is chronic, stable, and not likely to improve.  Unfortunately, there is no current treatment available for his cognitive disorder."  Plaintiff's Exhibit 1, p. 10.

5.      On May 24, 2001, based upon the extensive medical evaluation conducted by two psychiatrists and a neurologist, the Plaintiff was issued a permanent physical profile under the provisions of Army Regulation 40-501 on the basis of: 1) Cognitive Disorder NOS, Moderate;  2) Decreased Visual Acuity in the Left Eye; and 3) Cervical Spondylosis.  The Profile required an assignment limitation as follows: "Cannot be

assigned as a physician in the specialty of nuclear medicine given his Cognitive Disorder, NOS." Plaintiff's Exhibit 3.

6.    While the Plaintiff's profile and withdrawal of clinical practice privileges was applicable to his service as a nuclear medicine physician, he was otherwise found capable of performing military duties and his continuance on active duty was "not medically contraindicated." He was retained on active duty. Plaintiff's Exhibit 4, p. 2.

**Plaintiff reassigned to non-clinical duties, 1998-2005**

7.    From 1998 through 2002, Plaintiff was assigned by the Army to duty as a Medical Abstraction Physician. Plaintiff's Exhibit 5.

8.    In November 1999, because of plaintiff's illness, the commander of Walter Reed permanently revoked Plaintiff's clinical practice privileges. Plaintiff's Exhibit 16, ¶6.[4] Plaintiff's assignment as a Medical Abstraction Physician in the years subsequent to this revocation therefore did not require clinical practice privileges. Plaintiff's Exhibit 5.[5]

---

[4]    Defendant groundlessly objects to the Plaintiff's Fact, disagreeing with the fact that "the Commander of the Walter Reed Health Care System, formally revoked the applicant's privileges on 11 November 1999." See ¶6 of Exhibit 16 to the Plaintiff's Motion for Summary Judgment (hereinafter "Plaintiff's Exhibit 16"), which shows this fact to have been established by the Army Board for Correction of Military Records in the administrative proceedings held below. See also AR 278, showing an effective date of 3 November 1999.

[5]    Defendant also groundlessly objects to this Fact, claiming that "On November 30, 1998, a Physical Evaluation Board concluded that Dr. Sangar did not possess any functional impairment which prevented his satisfactory performance of duty. AR 174." Defendant's document is signed by "Ronald A. Grubb, COL, IN." "IN" is an Army branch identifier for "Infantry." In other words, the Defendant depends upon the 1998 medical opinion of an infantryman that the Plaintiff suffered no medical impairment. The Defendant's dubious claim is rebutted by the exhaustive April 2001 medical evaluation conducted by a panel of three Army physicians on Plaintiff, submitted to the Court as
(footnote continues…..)

9.    Clinical practice privileges are necessary to physicians who are involved

in patient care.  Plaintiff's Exhibit 18, Army Regulation 40-68, ¶7-15.  However,

physicians who operate in an administrative assignment such as Plaintiff's do not require

privileges. Plaintiff's Exhibit 18, Army Regulation 40-68, ¶9-2b "Members of health care

staff who function under a standard job description in the performance of their duties…

do not require clinical privileges";  Plaintiff's Exhibit 7, fourth unnumbered page "[t]he

two OERs covering the period Nov 99 thru Nov 01… address the fact that he is not

performing as a Nuclear Medicine Physician";  Plaintiff's Exhibit 11, p. 5 (testimony of

Colonel Fitzpatrick, Plaintiff's commander, admitting he solicited Plaintiff to abandon

clinical practice credentials in 2004 while Plaintiff was assigned as a Medical Abstraction

Physician).[6]

---

(footnote continued….)
Plaintiff's Exhibit 1 (evaluation performed by Doctors Hough, Hicks, and Ryan).  In May
2001, two of those physicians, along with Dr. Carter,  issued a <u>permanent</u> physical profile
for Plaintiff, never subsequently revoked, which while finding Plaintiff fit for general
military duties, was permanently unable to perform nuclear medicine skills.  Plaintiff's
Exhibit 3.
          Next, Defendant maintains in contravention to Plaintiff's Proffered Fact that
Plaintiff's "clinical practice privileges were permanently revoked based upon poor
clinical practices.  AR 217."  Defendant's citation is to a non-verbatim transcript of
testimony given by Col. Thomas Fitzpatrick.  Colonel Fitzpatrick's testimony is rebutted
throughout the documents of record.  According to the documents of record, Plaintiff was
disabled by Chronic Inflammatory Demyelinating Polyneuropathy (CIDP), a debilitating
neurological illness which interferes with cognitive functions in its victims.  Plaintiff's
Exhibit 1 (2001 medical evaluation board),  Plaintiff's Exhibit 2 (1999 officer evaluation
report showing Plaintiff's performance of duty "encumbered by significant medical
illness, including prolonged hospitalization, convalescence, and on-going slow recovery
and rehabilitation.");  Plaintiff's Exhibit 3 (2001 permanent medical profile, Plaintiff
"cannot be assigned as a physician in the specialty of nuclear medicine given his
Cognitive Disorder, NOS");  Plaintiff's Exhibit 4 (permanent finding of cognitive
limitations, but retention on active duty "not otherwise contraindicated").

[6]    Defendant objects to this fact, but fails to provide citation to the record for
evidence to rebut it.  The fact is established.

10.     Plaintiff's last Officer Evaluation Report, which was issued in 2002, listed

Plaintiff's duties and responsibilities as a Medical Abstraction Physician as:

> Responsible for abstracting medical records from Tumor
> Registry at Walter Reed Army Medical Center.
> Participates in the maintenance of Tumor Registry files,
> reviews and analyzes materials to determine nature of the
> action to be taken, and completeness of information.

Plaintiff's Exhibit 5, first page of each Officer Evaluation Report – Part III
"Duty Description"

**Plaintiff subjected to first Board of Inquiry, 2002**

11.     On March 26, 2002, the Plaintiff was notified that he was subject to a

"show cause" Board of Inquiry under the provisions of Army Regulation 600-8-24

"based on a downward trend in your overall performance resulting in a consistent period

of mediocre service and failure to properly perform assignments commensurate with your

grade and experience.  This is substantiated by your Officer Evaluation Reports [OERs]."

Plaintiff's Exhibit 6.

12.     The Board of Inquiry convened on December 17, 2002, to consider

whether the Plaintiff should be separated.  The board made the following finding of fact:

"LTC Sangar has some of the substandard performance of duty stated in the

Memorandum of Initiation of Elimination, as follows: "It is the opinion of the board that

the cited downward trend in OERs from July 97 thru Nov 99 is potentially attributable to

LTC Sangar's diagnosed CIDP.  The two OERs covering the period Nov 99 thru Nov 01

do not address a downward trend, but address the fact that he is not performing as a

Nuclear Medicine Physician.  Furthermore, there is disagreement among Nuclear

Medicine Experts concerning his qualifications."  Plaintiff's Exhibit 7, fourth

unnumbered page.

13.    The 2002 Board of Inquiry unanimously voted to retain the Plaintiff in service, recommending that "LTC Sangar be retained in the service with reassignment with a period of supervision to assess his suitability to be credential [*sic*] and practice as a Nuclear Medicine Physician."  Plaintiff's Exhibit 7, Section V, fourth unnumbered page.

**Walter Reed fails to follow findings of first Board of Inquiry, 2003**

14.    The appointing authority approved the board's findings on February 26, 2003, but the Plaintiff was never transferred from his assignment at Walter Reed. Plaintiff's Exhibit 7, first unnumbered page; Plaintiff's Exhibit 11, p. 8.[7]

15.    In expectation of being allowed to return to a non-administrative assignment which involved patient care, Plaintiff applied for and was granted supervised clinical practice privileges at Walter Reed on April 28, 2003. Plaintiff's Exhibit 8.

16.    However, Plaintiff was not returned to clinical practice by decision of his commanding officer, Colonel Thomas Fitzpatrick.  Plaintiff's Exhibit 11, pp. 4-5.

17.    He was continued in his permanent assignment as a Medical Abstraction Physician at the Tumor Registry.   Plaintiff's Exhibit 11, pp. 8-9.

18.    At no time subsequent to this assignment as a Medical Abstraction Physician was Plaintiff ever informed or required by his superiors to obtain and maintain

---

[7]    Defendant objects to this fact but fails to support his objection with a valid citation to the record.  In this case, the failure to permanently transfer the Plaintiff away from Walter Reed is legally important, because Army Regulations require that officers alleged to have inefficient tendencies should be transferred to another commander.  This is obviously intended to give an officer a "fresh start" and to avoid a subsequent attempt to expel an officer by a disappointed Command, which is *exactly* what happened in this case.  See Plaintiff's Exhibit 20, Army Regulation 600-8-24 "Officer Transfers and Discharges," ¶4-1b.

Undisputed testimony from the government's own witness established both that the Plaintiff had sought "PCS" ("permanent change of station") and reclassification and retraining commensurate with his medical limitations, in order to fulfill his military duty. See AR 217, testimony of government's witness Susan Reed.

clinical practice credentials to continue in his non-clinical assignment as a Medical

Abstraction Physician – indeed, Colonel Fitzpatrick admitted under oath that he solicited

Plaintiff to surrender any clinical practice privileges in April 2004.  Plaintiff's Exhibit 11,

p. 5.[8]

---

[8]    While Defendant admits that Colonel Fitzpatrick solicited Plaintiff to permanently surrender clinical practice privileges, Defendant then curiously claims that Colonel Fitzpatrick "informed [Plaintiff] that he did not possess privileges and was required to request them.  AR 281."  Not only is Defendant's assertion contradictory on its face, it is also not supported by the cited document found at AR 281.

First of all, this Colonel Fitzpatrick never testified to this alleged "fact."  His testimony omits this subject altogether.  The Defendant's alleged "fact" is absent from its witness's three pages of single-spaced testimony.  See AR 217-19.

Second, Fitzpatrick's portion of the Plaintiff's 2002 OER states that the Plaintiff performed his Tumor Registry duties in a satisfactory manner, and does surely not state that the Plaintiff was required to, and failed to obtain, clinical practice credentials for this administrative job.  AR 121-22.

Third, AR 281 is a letter from Colonel Fitzpatrick sent in response to a letter sent by Plaintiff's former attorney requesting that the Plaintiff be allowed to retrain in nuclear medicine.  See AR 280.  AR 281 certainly does not state that Plaintiff was required to apply for clinical practice privileges in connection with his permanent assignment as a Medical Abstraction Physician.  Moreover, it is not disputed by the Defendant that subsequent to 1999 Plaintiff did not possess clinical practice privileges in his assignment as a Medical Abstraction Physician, but it is clear from the Officer Evaluation Reports of Plaintiff in those years, that he performed his duties in the Walter Reed Tumor Registry in a satisfactory manner, and more importantly, that clinical practice privileges were not required for his assignment.  See Plaintiff's Exhibit 5, (OER for 2001-2002, "LTC Sangar participated in the abstraction of medical records from the Tumor Registry at Walter Reed in a satisfactory manner…. LTC Sangar has effectively performed all the duties he is assigned.  He has an excellent attitude.  He is still not practicing clinical medicine.").  See also Id., (OER for 2000-2001, "LTC Sangar participated in the abstraction of medical records from the Tumor Registry at Walter Reed in a satisfactory manner….).

It was not disputed by Defendant that physicians who operate in an administrative assignment such as Plaintiff's do not require privileges. Plaintiff's Exhibit 18, Army Regulation 40-68, ¶9-2b "Members of health care staff who function under a standard job description in the performance of their duties… do not require clinical privileges."  See Fact 9, not disputed by Defendant.

Finally, Defendant's position also contradicted by his assent to Fact 16, which establishes that Plaintiff was not returned to clinical practice in 2003 by the decision of his commander.  If Plaintiff was not involved in clinical practice, then a fortiori, Plaintiff was assigned to administrative duties – which by Defendant's own regulation do not require clinical practice privileges.  See Army Regulation 40-68, ¶9-2(b).

**Plaintiff's brief clinical training in Washington state, 2003**

19.    On September 22, 2003, the Plaintiff was sent on temporary duty (TDY) to Madigan Army Medical Center to perform a brief period of training in nuclear medicine. This period extended to December 2, 2003.[9]  Plaintiff's Exhibit 10.

20.    The Plaintiff was issued clinical practice credentials by Madigan as a nuclear medicine physician for the period September 22, 2003 through May 5, 2005. These credentials were never subsequently modified or revoked, and unlike his Tumor Registry assignment at Walter Reed, were necessary to his TDY clinical medical duties at Madigan.  Plaintiff's Exhibit 9.[10]

21.    Memoranda related to Plaintiff's performance of duty noted that "we are all encouraged by your attention, cooperation and willingness to learn" (October 21, 2003 memo); "we are attempting to give him honest feedback on all the good things he is doing as a physician" (October 31, 2003 memo); "Dr. Cote stated that he has noticed a marked improvement in Dr. Sangar's skills" (November 13, 2003 memo).  The final memorandum noted that the brief refresher course was truncated by two weeks because of the death of Plaintiff's father.  Despite six years' illness and absence from the regular practice of medicine, it also noted that "LTC Sangar is a pleasant physician who availed himself of the learning opportunities at MAMC.  However, based on our observations of

---

[9]    Defendant's objection is semantic, and not material.  The fact is established.

[10]    Defendant objects to this fact, but fails to provide citation to the record for evidence to rebut it.  The fact is established.

his performance, we do not feel that LTC Sangar can practice independently at this time."
(January 23, 2004 memo).  Plaintiff's Exhibit 10.[11]

22.    Many physicians and other health care practitioners within the Army's
health care system do not practice medicine independently.  The governing regulation for
health care providers provides for an entire category of "supervised clinical privileges"
for health care providers who, like Lieutenant Colonel Sangar, have been away from
medical practice for lengthy periods of time, and who are undergoing retraining.
Plaintiff's Exhibit 18, Army Regulation 40-68, ¶7-15d.[12]

23.    The typical period for such training and limited clinical credentialing is six
months, not the 10 weeks of Plaintiff's case.  Army Regulation 40-68. ¶9-4e(2)(c).[13]

**Plaintiff returns to non-clinical duties at Walter Reed, 2004**

24.    Plaintiff's temporary duty at Madigan was terminated, and he was
returned to Walter Reed, which made no effort to employ the Plaintiff in nuclear
medicine, and re-sent him to the Tumor Registry where he resumed his six-year-long
assignment as a Medical Abstraction Physician.  Plaintiff's Exhibit 11, p. 9.

**Plaintiff's commander solicits surrender of any clinical practice privileges**

25.    Colonel Thomas Fitzpatrick, Deputy Commander of Walter Reed
Hospital, admitted under oath that in fact he solicited the Plaintiff in April 2004 to

---

[11]    Defendant's objection is semantic, and not material.  The fact is established.

[12]    Defendant objects to this fact, but fails to provide citation to the record for
evidence to rebut it.  The fact is established.

[13]    The regulation was inadvertently not reproduced in the Exhibits filed with the
Court.  AR 40-68 can be accessed electronically at
http://www.apd.army.mil/pdffiles/r40_68.pdf.  The Defendant's objection to this Fact is
semantic, and not material.

voluntarily relinquish any clinical practice credentials which Plaintiff might hold.

Plaintiff's Exhibit 11, p. 5.

### Plaintiff's commander violates Army regulations by not evaluating Plaintiff's performance

26.     As Plaintiff's supervising officer, Colonel Fitzpatrick was responsible to prepare a yearly Officer Evaluation Report (OER) appraising the performance of Plaintiff as an Army Officer.  Plaintiff's Exhibit 19, Army Regulation 623-3 "Evaluation Reporting System," ¶1-8.

27.     Colonel Fitzpatrick issued Plaintiff's OER only until the date of the first Board of Inquiry in 2002.  Plaintiff's Exhibit 5.  He thereafter failed to evaluate Plaintiff's performance of duty in 2003, 2004, and 2005.  Plaintiff's Exhibit 15, p. 10-13; Plaintiff's Exhibit 16, p. 8.

28.     Officer Evaluation Reports are the primary means by which an officer's performance of duty is evaluated in the Army.  Plaintiff's Exhibit 19.

29.     Army Regulation 600-8-24 requires that if an officer is to be subjected to a Board of Inquiry and separated, "[t]he officer's ineffectiveness will be systematically recorded in documents that specify each period covered, duties observed, and defects noted.  Recommendations for elimination action will not be based on generalities and vague impressions.  It is necessary to document, in writing, the precise reasons an officer is considered ineffective."  Plaintiff's Exhibit 20, Army Regulation 600-8-24, "Officer Transfers and Discharges" ¶ 4-1b.[14]

---

[14]     Defendant objects to this fact, but fails to provide citation to the record for evidence to rebut it.  The fact is established.

**Plaintiff subjected to second Board of Inquiry, 2004-05**

30.    On September 24, 2004, the Plaintiff received notice of a second initiation

of elimination.  The claim was:

> My action is based on the following specific reasons for
> elimination:  On 23 January 2004, the Madigan Army
> Medical Center Nuclear Medicine Service and the Nuclear
> Medicine Consultant to The Surgeon General concluded
> that you could not practice independently as a nuclear
> medicine physician after completing your six weeks of
> refresher training and familiarization followed by four
> weeks of assessment of your potential to practice
> independently.  This independent training and evaluation
> was performed following several years of performance
> problems at Walter Reed Army Medical Center.

Plaintiff's Exhibit 12.

31.    The letter cited, without identifying any specific instance: "Conduct or

actions that result in the loss of a professional status, such as withdrawal, suspension or

abandonment of professional license, endorsement, or certification that is directly or

indirectly connected with or is necessary for the performance of one's military duties.

(For AMEDD [Army Medical Department] officers, this includes the partial or complete

suspension, limitations, withdrawal, or denial of clinical practice privileges.)"  Plaintiff's

Exhibit 12.[15]

---

[15]    The Defendant objects to this Fact.  However, the objection is factually incorrect.
There was no instance cited subsequent to the First Board of Inquiry where the Plaintiff's
clinical practice credentials were "suspended", "limited", "withdrawn," or "denied."  The
Defendant's claim of fact has nothing to do with an adverse action taken against
Plaintiff's clinical practice privileges – merely that one sentence of one document
claimed that the Plaintiff was "unable to practice medicine independently at this time."
See Material Fact 21, *supra*.  An opinion as to inability to practice clinical medicine
independently is not an adverse credentialing action, particularly since Army Regulation
40-68 provides for an entire category of supervised clinical practice for providers unable
because of illness to practice independently.  See Material Fact 22, *supra*.

**No instances of "suspension, limitation, withdrawal, or denial" of privileges**

32.     Subsequent to the first Board of Inquiry in 2002, at no time was Plaintiff subject to "partial or complete suspension, limitations, withdrawal or denial of clinical practice privileges." Plaintiff's Exhibit 8 (Walter Reed privileges); Plaintiff's Exhibit 9 (Madigan privileges); Plaintiff's Exhibit 11, p. 3 (testimony of Susan Reed), p. 5 (testimony of Col. Fitzpatrick admitting he solicited Plaintiff to relinquish any privileges he may hold).[16]

**Second Board of Inquiry violates Army's "Administrative Double Jeopardy" rule**

33.     A second Board of Inquiry was held on March 28, 2005. At the hearing, the Recorder submitted voluminous documentation concerning conduct that was already the subject of the 2002 show cause board. Specifically, Government Exhibits 14, 15, 16, 17, 18, and 19 of the Record of Proceedings all outlined incidents and conduct of the Plaintiff which took place years before the first show cause board, held in December 2002. These documentary exhibits included:

          *  05 February 1999 memorandum: Notice of
          suspension of LTC Sangar's clinical privileges.

          *  19 April 1999 memorandum: Notice of
          suspension of LTC Sangar's clinical privileges.

---

[16]     Defendant's objection to this fact has nothing to do with the veracity or falsity of the Material Fact. Defendant cites no instance where the Plaintiff's clinical practice privileges were "suspended," "limited," "withdrawn," or "denied," which is a requisite instance necessary for adverse action under AR 600-8-24. As noted in the Plaintiff's original Motion, the government's position would logically mean that a judge of this Court would be liable for impeachment and removal from the bench for her failure to make an application for membership to the Utah Bar Association.

        \* 03 November 1999 memorandum: Notice to LTC

Sangar of the revocation of his clinical privileges.

        \* 03 November 1999 memorandum: LTC Sangar's

receipt of the notice of the revocation of his privileges.

        \* 18 February 2000 memorandum: Notice of LTC

Sangar informing him that his appeal of the revocation of

his privileges is denied.

        \* 30 November 2000 memorandum: Notice to LTC

Sangar informing him that the MEDCOM Appeals

Committee supports the decision to revoke his privileges.

Plaintiff's Exhibit 13.[17]

    34.    In addition to the documents he introduced, the Recorder solicited

extensive testimony from witnesses concerning allegations of conduct by the Plaintiff

which also were the subject of the December 2002 board.   This testimony included:

---

[17]    Defendant's semantic objection is to say that the Defendant did not submit "voluminous" documentation related to alleged performance failures by Plaintiff prior to the first Board of Inquiry in 2002.  After a review of the Administrative Record, it appears that the <u>only</u> material documentary evidence of record submitted by the government in the second Board of Inquiry in 2005 concerned alleged performance deficiencies <u>prior</u> to the first Board.  The government offered no documentary evidence of performance failure subsequent to the 2002 Board.  The government's second Board of Inquiry was nothing more than a "mulligan," a re-run of the factual allegations already considered and rejected in 2002.  See AR 255 (government exhibits 1-13 for second Board, all of which are transmittal correspondence, none of which are substantive) and AR 272 ("substantive" exhibits 14-23, of which number 22 was excluded from the record and not submitted, 14-19 are pre-2002, 23 is a procedural document between board counsel, not substantive, and AR 20 and 21 are a letter from Plaintiff's counsel to Colonel Fitzpatrick and Fitzpatrick's reply.)  <u>None</u> of the documentary exhibits submitted by the government at the second Board of Inquiry concerned any performance failure by Plaintiff.  There were <u>zero</u> documents submitted to the 2005 Board on this subject.

      \* Ms. Susan Reed extensively referencing

Plaintiff's 1999-2000 performance of duty.[18]

      \* Colonel Thomas Fitzpatrick extensively

testifying about Plaintiff's performance of duty from 1999-

2002.

Plaintiff's Exhibit 11, pp. 3-4 (Reed), 4-6 (Fitzpatrick).

35.     After re-considering all of this evidence and testimony which had already been thoroughly considered by the December 2002 Board of Inquiry, the new Board of Inquiry in March 2005 voted to eliminate the Plaintiff from the service. Plaintiff's Exhibit 11, handwritten "Findings and Recommendations Worksheet."[19]

36.     In the 2005 Board of Inquiry, almost all of the government's documentary exhibits concerned conduct and performance of duty by the Plaintiff prior to the first show cause board held in December 2002 which decided to retain the Plaintiff in service. Almost all of the testimony of all witnesses offered for testimony by the board recorder concerned conduct and performance of duty by the Plaintiff prior to December 2002. Plaintiff's Exhibit 11.[20]

37.     In addition, the government failed to offer any documentary exhibits such as Officer Evaluation Reports for the years 2003, 2004, or 2005 that would demonstrate

---

[18]    Defendant admits that Ms. Reed had no knowledge of Plaintiff's performance of duty subsequent to 1999. Def. Resp. to Plaintiff's Facts, ¶34.

[19]    The Defendant's objection is semantic, not material, does not cite to any part of the record, and in any event was rebutted conclusively by n.17, supra.

[20]    Again, the Defendant's objection is semantic, not material, does not cite to any part of the record, and in any event was rebutted conclusively by n.17, supra.

poor performance by the Plaintiff of his actual assigned duty as a Medical Abstraction

Physician, for which no clinical practice credentials are required. Plaintiff's Exhibit 11.[21]

38.     The March 2005 board recommended an Honorable Discharge.

Plaintiff's Exhibit 11, handwritten "Findings and Recommendations Worksheet."

**Walter Reed converts honorable discharge to discharge for "misconduct"**

39.     However, the post-board processing by Walter Reed added in the

specification of "misconduct" to the Plaintiff's separation documents, making the

Plaintiff ineligible for any separation pay for his nearly 18 years of continuous active

federal service.  No explanation exists in the record why this additional, highly pejorative

description of Plaintiff's long service was added to his military records.  Plaintiff's

Exhibit 14, Form DD214.[22]

**Plaintiff exhausts administrative remedies**

40.     Plaintiff appealed his discharge for misconduct to the Army Board for

---

[21]     Defendant objects to this fact, but fails to provide citation to the record for
evidence to rebut it.  The fact is established.

[22]     Defendant claims here that an allegation citing misconduct was warranted, but
"misconduct" is only one of four clauses in the cited regulation, the others being "moral
dereliction," "professional dereliction," or "in the interests of national security."  AR
600-8-24 ¶4-9(b).  Subparagraph (9), under which Defendant agrees that Plaintiff was
discharged, does not reference "misconduct" at all.
        Furthermore, there was no finding of "misconduct" by the second Board of
Inquiry.  See AR 241.
        The addition of "misconduct" to the Plaintiff's discharge documents was a
calculated insult by use of a pejorative characterization of service.  This pejorative
characterization has not been removed from Plaintiff's military records (see AR 185),
though there is a appending document (AR 186) which purports to set aside the discharge
characterization.  The original DD214 is the only discharge document the Plaintiff has
been issued by Defendant, none which deletes the pejorative has been issued.  When
plaintiff applies for any employment, his official discharge document of record from the
Army shows him to have been discharged for "misconduct."  The failure of the ABCMR
to remove this allegation of "misconduct" from Plaintiff's records is grounds enough for
the Court to reverse the ABCMR decision refusing to delete it.  This issue was
specifically raised by Plaintiff below. See AR 24-25.

Correction of Military Appeals on October 16, 2005.  Plaintiff's Exhibit 15.

41. The Army Board denied Plaintiff's appeal *in toto* on August 31, 2006.

Plaintiff's Exhibit 16.

### III.    LEGAL ARGUMENT

### a.    Defendant's notice was defective.

The second Board of Inquiry put the Plaintiff on notice of one allegation, plus an

amorphous claim of "following several years of performance problems":

> My action is based on the following specific reasons for
> elimination:  On 23 January 2004, the Madigan Army
> Medical Center Nuclear Medicine Service and the Nuclear
> Medicine Consultant to The Surgeon General concluded
> that you could not practice independently as a nuclear
> medicine physician after completing your six weeks of
> refresher training and familiarization followed by four
> weeks of assessment of your potential to practice
> independently.  This independent training and evaluation
> was performed following several years of performance
> problems at Walter Reed Army Medical Center.

Plaintiff's Exhibit 12.

In the actual hearing, there was a complete absence of either testimonial or

documentary evidence from the government tending to prove its sole allegation

pertaining to performance of duty at Madigan Army Medical Center.  Neither Colonel

Fitzpatrick (from Walter Reed) nor Ms. Reed (also from Walter Reed) testified as to

anything about Plaintiff's alleged performance of duty at Madigan Army Medical Center.

AR 216-219 (transcript of testimony of Reed and Fitzpatrick).

Moreover, not one single document offered by the government at the second

Show Cause Board delineated any allegation arising from substandard performance of

duty at Madigan, as the Plaintiff was put on notice.  While the government indicated that

19

it would call three Madigan officers to testify against Plaintiff in his Board of Inquiry, none did.  See AR 236.

After no testimony was given by Madigan officers on Plaintiff's performance of duty, after no documentary evidence was offered by the government at the Board of Inquiry to substantiate any performance of duty deficiencies subsequent to 2002, the board then turned on pre-2002 matters already litigated and resolved by the first Board of Inquiry in the Plaintiff's favor – plus the surprise addition of an allegation of "misconduct" to which the Plaintiff was never given notice, the infamous "clinical practice credentials" allegedly needed for the Plaintiff's administrative, non-clinical practice job.  Because it links with the issue of Defendant's admitted failure to evaluate Plaintiff's performance of duty subsequent to his 2002 Board of Inquiry, the lack of notice on this central issue is fatal to the administrative proceeding.  It is an elementary concept of administrative law that a "party is entitled to know the issues on which the decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it."  Williston Basin Inter. Pipeline Co. v. FERC, 165 F.3d 54, 63 (D.C. Cir. 1999).

**b.      The Army's confessed violations of its regulations led to the Defendant's discharge.**

In order for Plaintiff to prevail in this APA case, the case law shows that not only must the Plaintiff prove that the Defendant violated his own regulations, but also that the violations of those regulations by Defendant have a causal nexus with his discharge.  Godwin, 338 F.3d at 1380-81.  See also Lindsay v. United States, 295 F.3d 1252, 1258 (Fed. Cir. 2002)("A claim for relief based on an allegedly defective OER therefore states a justiciable controversy if the claim is premised on procedural defects in the

decisionmaking process that are clear violations of a statute of regulation that governs the process by which OERs are compiled and considered.")

In this case, the sole factual finding of the Board of Inquiry which eliminated Plaintiff from the service is reproduced in the record at AR 241. The finding was that Plaintiff required credentials to practice nuclear medicine in his assignment and failed to maintain them. The Plaintiff was never put on notice that the question of his clinical practice credentials as a Medical Abstraction Physician would raised as an issue in his notice of the administrative hearing.[23] Moreover, the Defendant's admitted violation of his own regulations by failing to produce Officer Evaluation Reports for 2003, 2004, and 2005 made it impossible for the Plaintiff to show that "clinical practice credentials" were unnecessary to his administrative assignment as a Medical Abstraction Physician in those years, which was the only issue the Board of Inquiry made factual findings on. Cf. Plaintiff's Exhibit 5 (1999-2002 OERs showing lack of requirement for clinical practice credentials for Plaintiff's assignment as Medical Abstraction Physician).[24]

---

[23] This matter will be briefed at length by the Plaintiff in his Opposition to the Defendant's Motion for Summary Judgment.

[24] The government now asks the Court to make a factual finding that Plaintiff's performance of duty as a Medical Abstraction Physician was unsatisfactory. See Def. Br. at 22. In order to believe this position, the Court would have to believe that Colonel Fitzpatrick's written evaluation in 2002, which stated that Plaintiff's performance of duty as a Medical Abstraction Physician was satisfactory, later changed. See Plaintiff's Exhibit 1. There is uniform agreement throughout the extant OERs that Plaintiff performed his administrative duties in a satisfactory manner. Id.

If the government's position as to this tidbit of testimony is to be believed, it underscores the importance of the three years' missing evaluation reports. It also underscores the importance of the Army's own regulation that requires that "ineffectiveness will be systematically recorded in documents that specify each period covered, duties observed, and defects noted.... It is necessary to document, in writing, the

(footnote continues....)

**c.     The ABCMR's decision was arbitrary and capricious in failing to consider Plaintiff's arguments and to explain its findings in a legally defensible manner.**

In this case, the ABCMR was unconcerned with Defendant's procedural violations of his own regulations, and the Defendant here, while admitting fault, takes the tack of the ABCMR by concentrating his allegations upon his belief that the Plaintiff was a bad officer. While it is "clear that the [Army] does not wish to retain him in active service," the Plaintiff has a right to judicial review of the defective administrative procedures which discharged him from service. Fisher v. United States, 402 F.3d 1167, 1177 (Fed. Cir. 2005)(*en banc*).

Likewise, the ABCMR brushed off the legal arguments advanced by the Plaintiff in the proceeding below, focusing on all of the allegations of misconduct which pre-dated the 2002 Board of Inquiry. See Plaintiff's Exhibit 16, pp. 2-5 (ABCMR decision). The ABCMR completely ignored the legal argument of Plaintiff that the Defendant's own regulation, Army Regulation 40-68, that Plaintiff was not required to possess clinical practice privileges for his assignment as a Medical Abstraction Physician. See Plaintiff's Exhibit 15 (application to the ABCMR) at 10-13.

---

(footnote continued….)
precise reasons an officer is considered ineffective." Plaintiff's Exhibit 20, Army Regulation 600-8-24, "Officer Transfers and Discharges," ¶9-1b (emphasis added).

What the Army asks this Court to do is to delve into testimony and evidence below, and to draw conclusions there from. A reviewing Court is singularly unable and unqualified to partake in a factual review of an administrative action involving the military. Crane, 92 F. Supp. at 163-64. The Court is limited to applying the uncontested facts of the Administrative Record to analyze whether the Army followed its own regulations. Id.

In this case, the Defendant admits that he did not follow his own regulations. In order to prevail, Plaintiff need only make a causal nexus showing that these failures resulted in severe prejudice to him. Frizelle, 111 F.3d at 177; Lindsay, 295 F.3d at 1258.

While the decision of the ABCMR need not be a model of clarity, it must address the legal claims put squarely before it, and to explain its decisionmaking in a comprehensible manner which a Court may review. Dickson v. Secretary of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995). In this case, the ABCMR decision fell short of even the lax standards outlined in Dickson.

First, the ABCMR did not address the fact, which is undisputed before this Court, that a physician such as Plaintiff that is assigned to an administrative job is not required to possess clinical practice privileges.

Second, the ABCMR failed to address the "Administrative Double Jeopardy" argument which Plaintiff set forth with exacting clarity in his application to the ABCMR and his Motion for Summary Judgment.[25]

Finally, the Army's own explicit regulations require written evidence by which to judge an officer's alleged inefficiencies. See Plaintiff's Exhibit 15, (ABCMR application, pp. 11-12), citing Army Regulation 600-8-24, ¶9-1b. The ABCMR decision was again silent.

---

[25]    The Defendant here alleges that the ABCMR found that the "totality of [Plaintiff's] record" justified expulsion of the Plaintiff from the Army. Def. Br. at p. 20. By the terms of its own Administrative Double Jeopardy regulation, the Army was constrained from re-hearing allegations of misconduct which had already been the subject of a Board of Inquiry. See Pl. Br. at 20-22.
        The Defendant here attempts to perform the legal analysis which the ABCMR did not, see Def. Br. at 19-21, but the question for this Court is the failure of the ABCMR to answer the Plaintiff's assignment of error, not whether the Defendant can now come up with an argument to make up for its absence in the ABCMR's decision under review. The ABCMR's decision can be upheld, if at all, only upon "the same basis articulated in the order by the agency itself." Kreis v. United States, 406 F.3d 684, 686 (D.C. Cir. 2005). An ABCMR decision which "does not provide anything approaching a reasoned explanation for its decision" cannot stand. Dickson, 68 F.3d at 1404. Claiming that the "totality of [Plaintiff's] record" justifies the Army's wholesale violation of its own regulations is an absurdity which allows Defendant to violate his own regulations at will.

**d.    Plaintiff has not received all the relief to which he is entitled.**

Finally, the Defendant claims that Plaintiff has already received all the relief to which he is entitled when he received half separation pay.  Def. Br. at 23.[26]  However, Defendant does not dispute that Plaintiff has not been reinstated in the service, and his discharge set aside.  See Plaintiff's Exhibit 15 (ABCMR application at p. 1)(request for reversal of involuntary discharge from active duty and reinstatement to active duty retroactive to that date).  See also Complaint, §VI, "Prayer for Relief."

Plaintiff's prayer for relief is known as the "constructive service doctrine," which the long-standing and controlling precedent of D.C. Circuit defines as a "legal fiction" in which:

> Courts attempt to return successful plaintiffs to the position that they would have occupied "but for" their illegal release from duty…. as appellants have never been lawfully terminated from active duty, they are deemed to have served during the time of their illegal release.  Accordingly, it is fully consistent with the holding in our previous opinion in this case to award appellants retroactive reinstatement to the positions they held on their respective dates of separation, with full active duty pay, allowances, and other benefits of service, including active duty credits for retirement purposes.

Dilley v. Alexander, 627 F.2d 407, 413 (D.C. Cir. 1980).

---

[26]    Defendant does not explain how "half" separation pay makes the Plaintiff "whole."  According to the American Heritage Dictionary, 2006 ed., "Half" is defined as "a. One of two equal parts that together constitute a whole" or alternatively "b.One part approximately equal to the remaining part."

Defendant has surely not made the Plaintiff "whole," and based on Defendant's admitted, wholesale failure to follow his own regulations, the Plaintiff was not lawfully removed from active duty in October 2005.[27]

Respectfully submitted,

/s/_____

Christopher A. Sterbenz
Counsel for Plaintiff
P.O. Box 126
Vienna, Virginia  22183
(703) 620-2313
CASterbenz@aol.com
D.C. Bar No. 437722

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2007, I caused the foregoing to be served via the Court's electronic delivery system, on counsel for the Defendant Steven M. Rainieri:

/s/_____

Christopher A. Sterbenz

---

[27] Finally, the Defendant, without citation to any authority, claims since the Plaintiff would have eventually retired from active duty, he is not entitled to relief.  The age restriction on Plaintiff's service is permissive, as many medical officers serve on active duty past age 62.  See, e.g., "Dr. John Caulfield's report from the front" Journal of the American Dental Association, Vol. 136, No. 3, at 308-309 (70 year-old Army dentist assigned to Afghanistan), found at http://jada.ada.org/cgi/content/full/136/3/308 (accessed April 26, 2007).  See also Miller v. Webb, 698 F. Supp. 661, 662 (S.D. Miss. 1988)(age restriction no defense to reinstatement of officer), citing Mogavero v. McLucas 543, F.2d 1081, 1085 (4th Cir. 1976)(on remand to Air Force where procedural rights were violated, Air Force's decision must be based on plaintiff's age at time adverse action was rendered without appropriate procedures).  Until Plaintiff has been lawfully removed from active duty service in the Army, the Defendant is liable to him for his continuing constructive service.  Dilley, 627 F.2d at 413.

25