UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIJAY SANGAR, M.D., Ph.D. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) C.A. No. 06-2015 (CKK) |
| | ) |
| PETE GEREN | ) |
| Acting Secretary of the Army | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, through undersigned counsel, and hereby submits this Opposition to the Defendant's Motion for Summary Judgment.[1]

## I.    INTRODUCTION

Defendant admits that the Army erred and largely failed to abide by its own regulations in expelling the Plaintiff from active duty with a discharge for "misconduct." In an attempt to undo the damage, Defendant here asks the Court to re-weigh the evidence, make factual determinations which are not supported by the record below, consider claims which are not present in the Administrative Record, and reach a conclusion that even though the Defendant failed to adhere to the regulations governing discharge of officers from active duty, the Plaintiff nevertheless deserves to have been

---

[1] Defendant styled his motion as a "Motion to Dismiss, In Part, and for Summary Judgment," brought alternatively under Fed. RR. Civ. P. 12(b)(6) and 56. A motion brought under Fed. R. Civ. P. 12(b)(6) must admit as true the factual averments of Plaintiff's Complaint, and refrain from offering evidence beyond the four corners of the Complaint. Defendant's motion does neither. It should therefore be treated by the Court as a Motion for Summary Judgment. See. e.g., Michigan Paytel Jt. V. v. City of Detroit, 287 F.3d 527, 533 (6th Cir. 2002); Marques v. Federal Reserve Bank, 286 F.3d 1014, 1017 (7th Cir. 2002).

expelled from active duty because the Court can conclude that he really was not a very good officer.[2] Because Defendant's admitted and clear violations of his own regulations strike at the heart of the legal validity of the proceedings below, the case law holds that a reviewing Court may not reach the factual merits, but must reverse the legal errors which resulted in Plaintiff being removed from active duty.[3]

---

[2] For example, the Defendant makes much of his allegation that the Plaintiff's assignment as a Medical Abstraction Physician from the years 1999-2005 is a position normally filled by a "General Schedule 6 level employee." Def. Mem. at p. 14. What the Defendant does not say is that it was the Walter Reed Command's own choice to assign these duties to the Plaintiff; Walter Reed refused to retrain or transfer the Plaintiff despite the 2002 Board of Inquiry requiring such, as well as his (and others') many requests. See Plaintiff's Exhibit 7 to his Motion for Summary Judgment, Section V, fourth unnumbered page (2002 Board of Inquiry finding requiring reassignment, ignored by Walter Reed Command); AR 280 (letter of Plaintiff counsel requesting retraining, ignored by Walter Reed Command); AR 219 (testimony of Dr. Lawrence Holder regarding Plaintiff's desire for retraining after illness and reassignment); AR 220 (testimony of Walter Reed physician Dr. Robert Bridwell, testifying as to Plaintiff's requests for reassignment and retraining, Plaintiff's requests and Dr. Bridwell's requests ignored by Walter Reed Command). As a soldier, the Plaintiff is absolutely obligated to obey the lawful commands of his superiors, and if they ordered him to perform work that could have been performed by a GS-6, he was obligated to do what they required.

While the Walter Reed Command's decision was certainly legal, its refusal to reassign or retrain Plaintiff to another position was indisputably stupid, especially since that Command refused to assign available officers – such as the Plaintiff - to supervise rodent eradications, renovations to dilapidated housing for wounded veterans, and other mundane duties which resulted in inexcusable and undeniable neglect of wounded soldiers in that hospital. The public disclosure of the Walter Reed Command's criminal misconduct in neglect of our soldiers resulted in the Commander being fired by the Secretary of the Army. See "Army Fires Walter Reed Commander," The Washington Post, March 2, 2007, p. A01 (http://www.washingtonpost.com/wp-dyn/content/article/2007/03/01/AR2007030100999.html ) accessed May 11, 2007.

[3] To prevent repetition, the Plaintiff will not spend a large portion of this brief re-stating and re-arguing the facts and law set forth in his own Motion for Summary Judgment, filed March 5, 2007, and his Reply brief to the same, filed April 27, 2007. Those documents and their supporting exhibits are incorporated to this Opposition by reference.

## II.     PLAINTIFF'S RESPONSES TO DEFENDANT'S MATERIAL FACTS

Plaintiff does not object to Defendant's proffered facts 1 through 4.

Plaintiff objects to Defendant's proffered fact number 5.  The Defendant seeks the Court to credit the medical opinion of an infantry officer as to the Plaintiff's medical condition.  The medical opinion of this infantryman is rebutted by the exhaustive findings of the board of physicians found at Plaintiff's Exhibits 1, 3, and 4.

Plaintiff objects to that portion of Defendant's proffered fact 6 which claims that on November 3, 1999 Plaintiff's clinical practice "privileges were revoked for poor clinical practices."  Plaintiff's inability to practice nuclear medicine was caused by illness, not by poor clinical practices.  Plaintiff's Exhibits 1, 3, 4;  See also Plaintiff's Exhibit 2, 1999 Officer Evaluation Report showing Plaintiff's "performance during this rating period has been encumbered by significant medical illness, including prolonged hospitalization, convalescence, and on-going slow recovery and rehabilitation."

Plaintiff objects to the materiality and accuracy of Defendant's proffered fact 7, which describes a 1999 OER.  The performance questions raised in the OER are medically attributable not to any cause or conduct, but because of medical illness.  See Plaintiff's Exhibits 1, 3, and 4.  Plaintiff was reassigned to an assignment as a "Medical Abstraction Physician."  Plaintiff's Exhibit 5, 2001 and 2002 OERs.  The reassignment was involuntary, and the alleged GS level of the work is irrelevant and immaterial, since Plaintiff is obligated to perform whichever duties the Army requires him to do.  See n.2, supra, for citations to record.  If the Army had ordered Plaintiff to spend his days peeling potatoes in the mess hall, he would have been required to comply with this order.

Plaintiff does not object to Defendant's proffered facts 8 through 11.

Plaintiff objects to Defendant's proffered facts 12 and 13. No document in the record of this case supports these allegations. The Administrative Record runs 404 pages. The citations to "AR 490" is not a typographical error, as no document proving this alleged fact appears elsewhere in the record.

Plaintiff does not object to Defendant's proffered fact 14.

Plaintiff objects to Defendant's proffered fact 15, as it also cites to non-existent pages of the Administrative Record.

Plaintiff objects to Defendant's proffered fact 16 as being incomplete. Plaintiff was indeed granted supervised privileges in 2003 (see Plaintiff's Exhibit 8). However, it is undisputed by Defendant that Plaintiff was not permitted by the Walter Reed Command to perform any duties which required clinical practice privileges. See Plaintiff's Material Fact 16 and documents cited therein (agreed to by Defendant at ¶16 of his Response to Plaintiff's facts). See also AR 220-21 (testimony of Dr. Bridwell).

Plaintiff objects to Defendant's proffered fact 17 as citing to non-existent pages of the Administrative Record. The referenced documents were offered by the Plaintiff as part of Plaintiff's Material Fact 21 to his own Motion for Summary Judgment, which should therefore govern. However, these documents were not considered by the 2005 Board of Inquiry which voted to expel Plaintiff from active duty. See AR 243-283 for government exhibits at 2005 Board of Inquiry.[4]

---

[4] The only evidence in the Administrative Record regarding Plaintiff's practice of medicine submitted to the 2005 Board of Inquiry was given in testimony by Dr. Lawrence Holder of the University of Florida, former Chief of Nuclear Medicine of the University of Maryland Hospital. AR 219-220. Dr. Holder's unrebutted testimony showed that the Plaintiff's brief re-training stint in 2003 was insufficient for a long-
footnote continues……..

Plaintiff objects to Defendant's proffered fact 18 as being immaterial and inaccurate. This appears to be an internal correspondence document between two general officers which was not previously disclosed to Plaintiff nor used in the record of any proceedings below. It is therefore not material to this case. Moreover, the document purports to state "facts" which are contradicted by the documents of record. The allegations of the document regarding the Plaintiff's lack of illness are contradicted by Plaintiff's Exhibits 1, 3, and 4, as well as the results of the 2002 Board of Inquiry which required Plaintiff to be transferred, which the Army ignored. Plaintiff's Exhibit 7.

Plaintiff objects to the Defendant's proffered fact 19 on the basis of materiality. The Defendant cites to an ABCMR appeal by Plaintiff which dealt strictly with the issue of entitlement to bonus pay – the instant case is not an appeal of that ABCMR case, nor is this case a lawsuit about pay and allowances for military physicians. Under Fed. R. Civ. P. 56(e), cited facts must be admissible as evidence in a trial on the merits. This document is not admissible because it is immaterial and irrelevant to the issues of this case. Fed. R. Evid. 402. There is no claim by Plaintiff as to possession of "privileges to practice, unsupervised, nuclear medicine during the period in question," which rebuttal by these proffered documents or allegations are necessary.

Plaintiff does not object to Defendant's proffered fact 20 and 21.

---

……….footnote continued
sidelined physician to get back to 100% efficiency in practicing nuclear medicine, that Plaintiff's weaknesses in pharmaceuticals was completely understandable given the five year layoff, that the brief period of retraining in 2003 was insufficient from a medical perspective, and that Plaintiff was able to successfully retrain in nuclear medicine, should the Army have allowed him to do so (it forbade this). AR 220 (testimony of Dr. Bridwell). **No testimonial or documentary evidence contradicted Dr. Holder's unrebutted testimony.**

5

Plaintiff objects to the Defendant's proffered fact 22 in that it makes a characterization of an "honorable discharge" standing alone. Plaintiff's discharge document, still extant in his military record, bears the stigma of "misconduct" upon it. AR 185.

Plaintiff does not object to Defendant's proffered fact 23, but the grounds for relief in the cited document speak for themselves.

Plaintiff objects to Defendant's proffered fact 24 to the extent that the Plaintiff was awarded only "half separation pay." AR 186. Even though Defendant purports the opposite, the characterization of "misconduct" was not removed from Plaintiff's military discharge record. AR 185. The only extant version of Plaintiff's DD214 discharge document found at AR 184, notes discharge for misconduct.

Plaintiff objects to Defendant's characterizations of the findings of the ABCMR as facts. The language of the ABCMR decision speaks for itself. AR 2-9.

### III.     LEGAL ARGUMENT

In addition to the arguments which Plaintiff has set forth in his Memorandum of Points and Authorities, and his Reply Brief in support of his Motion for Summary Judgment, the Plaintiff sets forth here separate arguments specifying why the Defendant's cross Motion for Summary Judgment should be denied.

**1.     Defendant failed to provide Plaintiff proper notice of the specific charge of "misconduct" for which he was removed from the Army.**

Defendant's entire notice to Plaintiff as to the charge of misconduct laid against him in a letter dated September 24, 2004:

> My action is based on the following specific reasons for elimination: On 23 January 2004, the Madigan Army

6

>Medical Center Nuclear Medicine Service and the Nuclear Medicine Consultant to The Surgeon General concluded that you could not practice independently as a nuclear medicine physician after completing your six weeks of refresher training and familiarization followed by four weeks of assessment of your potential to practice independently.  This independent training and evaluation was performed following several years of performance problems at Walter Reed Army Medical Center.

AR 99.

The Board of Inquiry which eliminated Plaintiff from service, however, did not make any findings of fact on this charge.  Instead, the entirety of its findings are as follows:

>After the loss of your credentials to practice Nuclear Medicine, you failed to perform to the standards expected of a Lieutenant Colonel in the United States Army.  This includes your lack of initiative to become recredentialed, your apparent lack of insight in recognizing your clinical limitations and deficiencies and how to pursue correcting them since January 2004.  Without these credentials, you are unable to perform the duties for which you were employed.

AR 208.

As the Defendant argues in his Memorandum, the Plaintiff was discharged from the Army because he did not have clinical medical credentials at the time of the 2005 Board of Inquiry.  In Defendant's words, "Dr. Sangar was properly eliminated from service under the provisions of Army Reg. 600-8-24, para. 4-2(b)(9) for partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges." Def. Mem. at p. 16.

However, the Plaintiff was never put on notice that the issue of whether or not he possessed – or even needed – clinical practice credentials would be at issue at the board. Instead of concerning itself with the cited issue – that "the Madigan Army Medical

7

Center Nuclear Medicine Service and the Nuclear Medicine Consultant to The Surgeon General concluded that you could not practice independently as a nuclear medicine physician after completing your six weeks of refresher training and familiarization followed by four weeks of assessment of your potential to practice independently" – the Board of Inquiry's finding instead focused *only* on the credentialing issue.  Plaintiff was not on notice that this issue would be determinative, was not able, obviously, to call witnesses who would have testified that his permanent assignment as a Medical Abstraction Physician did not require clinical practice credentials.[5]

Moreover, the Court should be reminded here that while Defendant claims the medical credentialing issue was determinative of the discharge, the Defendant's sole material witness at the Board of Inquiry, Colonel Thomas Fitzpatrick, testified that he specifically solicited that Plaintiff relinquish his clinical practice privileges in mid-2004.  See Plaintiff's Material Fact 25, not controverted by Defendant.  Defendant's position is logically and legally inconsistent – it beggars belief that Plaintiff should be expelled from the Army for following the request of his Commander, the same Commander who then seeks to discharge Plaintiff on the grounds that Plaintiff followed his request.

The legal issue is one of notice – Plaintiff was notified that he would be boarded for allegations arising from Madigan Army Medical Center, and nothing in the notice

---

[5]     The Plaintiff has established beyond all dispute that not all physicians on active duty in the Army are required to maintain clinical practice credentials.  See Plaintiff's Motion for Summary Judgment Fact 9, not controverted by Defendant.

concerned the possession or necessity of clinical practice privileges.[6] AR 99.

Notice is an essential element under Due Process, as well as under this Court's judicial review under the Administrative Procedure Act. As no less an authority than Professor Bernard Schwartz lays out, it is an elementary provision of administrative law:

> The right to be heard includes the right to notice. Notice reasonably calculated to apprise parties of the pendency of the proceeding and afford them an opportunity to present their case is an elementary requirement of due process. The right to notice has two elements: (1) the right to notice of procedural rights, such as adequate advance notice of the right to a hearing and (2) adequate notice of the hearing itself and the issues involved…. In a license revocation case, for example, the agency must "set forth the charge and be sufficiently explicit to advise a person charged of the particular kind of misconduct which it is proposed to prove against him."

Schwartz, *Administrative Law*, 2d Ed., pp. 280, 283-84 (citations omitted).

Stein, Mitchell, and Menzies agree:

> Due process requires that parties to any final agency proceeding affecting a constitutionally protected interest are to be given notice of such proceedings. Adequate notice must inform the parties that the proceedings have been instituted, and it must also contain information sufficient to allow the preparation and presentation of objections. It is a denial of due process for an agency to reach a conclusion on the basis of evidence adverse to party without giving that party adequate notice of such evidence. **Deprivation of this basic procedural right cannot be cured before a court reviewing the agency's action.**

Stein, Mitchell, and Menzies, *Administrative Law*, §33.03[2][a] (emphasis added).

---

[6] Indeed, the Madigan claim was dropped entirely from the proceedings of the 2005 Board of Inquiry. Though witnesses from Madigan were disclosed by the Defendant, none were called to testify. See AR 233, 236 (Drs. Cote, Balingit, and Billingsley). Neither were any documents from Madigan received into evidence. See AR 243-283 (Defendant's Board exhibits, none of which are from Madigan, presumably because there were not witnesses called to support or authenticate them).

9

The instant case can certainly be equated to a licensure revocation case, as Professor Schwartz points out. Professor Alfred Aman's hornbook on administrative law makes a similar argument which resonates in this case:

> Another central purpose of the notice requirement is to inform the parties of the substantive issues that will be involved. The APA states that notice must inform the party of "the matters of fact and law asserted." Courts have equated this requirement with the Constitution: "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" Adequacy of notice should be evaluated "with due regard for the practicalities and peculiarities of the case." In a license revocation hearing, for example, notice which merely informed the party of a hearing was not sufficient. It had to advise the person of the particular acts and omissions with which he was charged, to enable him to prepare his defense.

Aman and Mayton, *Administrative Law*, Hornbook Series, 1993, at p. 220.

Plaintiff's purpose in emphasizing the issue of notice is to put the lie to the government's argument that his violations of his own regulations and of due process are mere technical trifles to be swept away with the flick of a wrist. Based upon the specific findings of the 2005 Board of Inquiry, a properly-formed notice to the Plaintiff would have read something like the following. Compare the actual notice at AR 99 with:

> My reason for taking this action is as follows: Subsequent to the 2002 Board of Inquiry which voted to retain you in service, you were assigned to permanent duty as a Medical Abstraction Physician. Your duty as a Medical Abstraction Physician required you to maintain unrestricted clinical practice privileges at Walter Reed Army Medical Center. Your Commanding Officer, Colonel Thomas Fitzpatrick, informed you in April 2004 that you were required to maintain clinical practice privileges in order to perform your duties. Despite Colonel Fitzpatrick's warning, you

10

>   did not apply for renewal of your clinical practice
>   privileges when they expired in April 2004.

Had Plaintiff been given such a notice, the factual averment of which the Defendant asks the Court to accept, the Plaintiff would have called witnesses and offered evidence to contradict such a charge.[7]  Instead, the Plaintiff was set off on a wild goose chase with the Defendant's disclosed witnesses not testifying, Defendant's entire material documentary offering being contained to pre-2002 allegations, and the Defendant's notice of issues being discarded for an entirely new finding of fact which bore no resemblance to the charge laid to Plaintiff at AR 99.

In its review of administrative law cases, the Court of Appeals looks dimly at such governmental conduct.  In a proceeding before the Federal Energy Regulatory Commission, the D.C. Circuit set aside agency action when decisions were reached based on facts not previously disclosed:

>   The Due Process Clause and the APA require than an
>   agency setting a matter for hearing provide parties "with
>   adequate notice of the issues that would be considered, and
>   ultimately resolved, at that hearing." [Citing Williston
>   Basin Inter. Pipeline Co. v. FERC, 165 F.3d 54, 63 (D.C.
>   Cir. 1999)].  This requirement ensures the parties' right to
>   present rebuttal evidence on all matters decided at the
>   hearing.  See Bowman Transp. Inc., v. Arkansas-Best
>   Freight Sys, Inc., 419 U.S. 281, 288 n.4 (1974)

Public Service Comm'n of Ky. v. FERC, 397 F.3d 1004, 1012 (D.C. Cir. 2005).

---

[7]  And if the evidence at the hearing had supported it, the finding of the Board of Inquiry could surely be understood in this context.  However, the factual finding of the Board of Inquiry fails to address the cause laid out at AR 99.

11

**2.    No adverse action against Plaintiff's license to practice medicine or his clinical practice credentials took place after the first Show Cause Board; Administrative Double Jeopardy bars retrial of old charges.**

Plaintiff set forth at length in his Motion for Summary Judgment the concept of Administrative Double Jeopardy, which forbids the Army from twice trying an officer before a Board of Inquiry on the same allegations of misconduct. In his own Motion for Summary Judgment, Defendant argues that Administrative Double Jeopardy does not apply, arguing that Plaintiff "was not the subject of 'administrative double jeopardy,' but was properly considered for elimination due to his loss of clinical practice privileges." Def. Mem. at 20.

The simple fact, however, is that the Administrative Double Jeopardy regulation found at AR 600-8-24 does not permit a "do-over" for the government when it tries an officer and fails to eliminate him, except in certain narrow, specifically enumerated exceptions, none of which were found below to be applicable here.[8]

Moreover, there was no "loss of clinical practice privileges" to give rise to a cause for removal from active duty. "Loss of clinical practice privileges" imports a legal term, an event which can only be occur pursuant to due process of law. To that end, an entire procedure is set forth in AR 40-68 governing the due process necessary for adverse action against a physician's clinical practice privileges. See Army Regulation 40-68 "Clinical Quality Management," Chapter 10, "Adverse Clinical Privileging/Practice Actions." This regulation is accessible online at http://www.army.mil/usapa/epubs/pdf/r40_68.pdf.

---

[8]    Defendant claims the ABCMR found that by assessing the "totality of [Plaintiff's] record," it is not in the "best interest of the Army to retain that officer" justifies waiving the Administrative Double Jeopardy requirement. Def. Mem. at p. 20. Should the Court recognize such a catch-all exception, it will inevitably apply in every case, and the Army Regulation against Administrative Double Jeopardy will have no meaning.

Never, subsequent to the 2002 Board of Inquiry which retained him in service, was the Plaintiff ever subjected to an adverse credentialing action.  There was, *ergo*, no "loss of clinical practice privileges" subsequent to 2002 which gave rise to a new cause of action permitting a new Board of Inquiry.  A new Board of Inquiry under AR 600-8-24 required "the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges."  See AR 600-8-24, ¶ 4-2(b)(9), cited by Def. Mem. at p. 10.[9]  None ever occurred.  Administrative Double Jeopardy bars the second Board of Inquiry.

## IV.     CONCLUSION

For the reasons set forth here, in the Plaintiff's memorandum of points and authorities in support of his motion for summary judgment, and in the reply brief in support of his motion, the Court should deny the Defendant's motion for summary judgment and enter summary judgment in favor of the Plaintiff.

---

[9]     The only issue is one of facility-specific credentials.  Never has the Plaintiff's license to practice medicine, issued by the State of Missouri in 1988, been subject to adverse action.  As part of the Board of Inquiry process, the Walter Reed Command that has been fixated on punishing Plaintiff solicited the State of Missouri to revoke the Plaintiff's license in Missouri.  The Missouri State Board of Registration for the Healing Arts investigated Walter Reed's claim.  The state board, which was objective and had no ax to grind against Plaintiff rejected Walter Reed's charge.  Similarly, in 2006 after his expulsion from the Army, the Plaintiff was granted a license to practice medicine by the State of Maryland.  Never in any circumstance reflected in the record or elsewhere has there ever been a case of medical malpractice or compromised patient safety attributed to the Plaintiff.  As this Court could easily take judicial notice of, Walter Reed Hospital, on the other hand, is the subject of many lawsuits and malpractice cases, including patient deaths from malpractice, judgments, and substantial settlements.

Respectfully submitted,

/s/_____
Christopher A. Sterbenz
Counsel for Plaintiff
P.O. Box 126
Vienna, Virginia  22183
(703) 620-2313
CASterbenz@aol.com
D.C. Bar No. 437722

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 14, 2007, I caused the foregoing to be served via electronic delivery, on:

Steven M. Ranieri
Special Assistant U.S. Attorney
555 Fourth Street, N.W.
Room E4408
Washington, D.C.  20530

/s/_____
Christopher A. Sterbenz

15