UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIJAY SANGAR, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:06-cv-02015 (CKK) |
| | ) |
| THE HONORABLE PETE GEREN | ) |
| Acting Secretary of the Army, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS, IN PART, AND FOR SUMMARY JUDGMENT**

Defendant respectfully submits its reply to Plaintiff's Brief in Opposition to Defendant's motion to dismiss, in part, and for summary judgment.  Plaintiff's Brief is replete with conclusory assertions that fail to establish any basis precluding dismissal or any genuine issue of material fact precluding summary judgment.  Plaintiff's Brief conspicuously fails to address most of Defendant's arguments, thereby conceding them, and, in the two instances where rebuttal is attempted, is rife with mischaracterization.  As set forth below and in Defendant's opening memorandum, Plaintiff's claims for habeas and mandamus relief should be dismissed and summary judgment granted to Defendant on Plaintiff's remaining claims.

## ARGUMENT

**I.  Defendant's Motion properly seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of Plaintiff's claims for habeas corpus and mandamus relief**

Instead of confronting the merits of Defendant's arguments for dismissal of his request for habeas and mandamus relief, Plaintiff responds solely by asserting that Defendant's motion was improperly brought pursuant to Rule 12(b)(6) and, therefore, must be considered a motion

for summary judgment under Rule 56.[1] (Plaintiff Brief, hereinafter "Pl. Br.", p. 1, fn. 1). Plaintiff's reasoning is incorrect, because he fails to distinguish the claims to which Defendant seeks dismissal (Plaintiff's habeas and mandamus claims) from those to which Defendant seeks summary judgment (Plaintiff's APA and "record correction" claims). Defendant's opening brief correctly stated the standards applicable to Rules 12(b)(6) and 56 (see Df.'s Br. pp. 4-12), and acknowledged that Rule 12 (b)(6) requires the court to accept the allegations of the complaint as true and draw all reasonable inferences in favor of the Plaintiff. Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir.1999); see also, Bell Atlantic Corp. v. Twombly, No. 05-1126, 540 U.S. ___, slip op. at 8 (U.S. May 21, 2007)(When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the Court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.") (Citations omitted). Applying this standard to Plaintiff's complaint, Defendant has established that Plaintiff fails to state a claim for habeas or mandamus relief.

Specifically, writs of habeas corpus may be granted for "members of the armed services who have been unlawfully detained, restrained or confined." Blackmon v. England, 323 F. Supp. 2d 1, 6 (D.D.C. 2004), (quoting Schlanger v. Seamans, 401 U.S. 487, 489 (1971)). Dr. Sangar, however, is not unlawfully being detained, restrained or confined by the military. (See e.g., Pl. Compl.: "[i]n 2005 the Plaintiff appealed his discharge..."¶ 40, "[Defendant's]...wrongful

---

[1] Even if this Court were to convert the portion of Defendant's motion to which it seeks dismissal under Rule 12(b)(6) to a motion for summary judgment under Rule 56, judgment in favor of Defendant is warranted. Plaintiff makes no showing whatsoever that he is entitled to habeas or mandamus relief, there are no issues of material fact in dispute and Defendant is entitled to judgment as a matter of law.

discharge of the Plaintiff for 'misconduct' is a legal wrong..." ¶ 42, "[Plaintiff seeks the Court to]...reinstate the Plaintiff to active duty, retroactive to the date of his involuntary discharge..." p. 14). Plaintiff has admitted in his complaint that he is no longer under the custody or control of the military. Hence, based on the factual averments of Plaintiff's complaint, he fails to state a claim for habeas relief.

Likewise, Dr. Sangar also fails to state a claim for mandamus relief, because he has failed to set forth the necessary prerequisites for such relief in his complaint. To qualify for mandamus relief, Plaintiff must show: 1) a clear right to the relief sought; 2) that the defendant has a clear duty to act; and 3) the absence of any other adequate remedy. Swan v. Clinton, 100 F.3d 973, 977 (D.C. Cir. 1996). Plaintiff fails on all three elements of this claim. Plaintiff fails to show a clear right to relief, because the composition of the military is a fundamentally military decision and courts simply are not competent to "detemin[e] who is fit or unfit to serve in the armed forces." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Furthermore, Plaintiff has failed to show that the Defendant has a clear, ministerial, non-discretionary duty to perform any acts other than those already performed on his behalf. ABCMR decisions are purely discretionary. 10 U.S.C. § 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.") (Emphasis added). Finally, Dr. Sangar has other adequate remedies, to include relief under the APA.

Accordingly, accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of the Plaintiff, as Rule 12(b)(6) requires, Plaintiff's claims for habeas and mandamus relief must be dismissed.

**II.     The arguments Plaintiff fails to address in his Opposition are conceded**

Plaintiff does not attempt to refute anywhere in his opposition Defendant's arguments that he fails to state a claim for habeas and mandamus relief (Df.'s Br. pp. 4-7), that the ABCMR concluded that there were no regulatory violations in his elimination proceedings (id. pp. 16-18), that the ABCMR properly concluded that the lack of evaluations did not invalidate the Board of Inquiry's findings (id. pp. 21-23), and that he has already received from the ABCMR the relief he now requests in his complaint (id. pp. 23-24). Plaintiff's opposition utterly fails to address these arguments and addresses only two issues: whether Plaintiff was not provided proper notice prior to his separation hearing (Pl. Br. p. 6) and whether administrative double jeopardy bars his separation (id. p. 12). "[A] court may treat those arguments that the plaintiff failed to address as conceded." Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)). See also Bancoult v.McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002). Therefore, the Court should find the arguments to which Plaintiff failed to address in his opposition as conceded.

**III.    Plaintiff received the proper notice prior to the Board of Inquiry**

Plaintiff argues that he was not provided proper notice of the reason why he was considered for separation from military service and asserts that "Defendant's entire notice to Plaintiff as to the charge of misconduct laid against him [was contained] in a letter dated September 24, 2004:

> My action is based on the following specific reasons for elimination: On 23 January 2004, the Madigan Army Medical Center Nuclear Medicine Service and the Nuclear medicine Consultant to The Surgeon General concluded that you could not practice independently as a nuclear medicine physician after completing your six weeks of refresher training and familiarization followed by four weeks of

> assessment of your potential to practice independently. This independent training and evaluation was performed following several years of performance problems at Walter Reed Army Medical Center.

Pl.'s Br. p. 7, citing AR 99. Plaintiff requests the Court to infer from this language that he was "never put on notice that the issue of whether or not he possessed - or even needed - clinical practice credentials would be at issue at the board." Id. at 7. As an antecedent issue, it is notable that Plaintiff failed to raise this argument in his application to ABCMR (AR 11-26).[2] It is well-settled that a plaintiff cannot raise an issue to a District Court if he failed to first raise it before the agency. See United States v. L.A. Tucker Truck Lines, 344 U.S. 33, (1952). Hence, Plaintiff is precluded from raising this argument before this Court.

Even assuming, *arguendo*, that this issue is properly before the Court for review, Plaintiff's argument is without merit. First, Plaintiff's opposition completely neglects to mention the paragraph that directly precedes the paragraph in the September 24, 2004 Notice of Separation upon which he relies. The paragraph Plaintiff ignores notified him that he was being required to show cause for retention on active duty for the following reason:

> Conduct or actions that result in the loss of a professional status, such as withdrawal, suspension or abandonment of professional license, endorsement, or certification that is directly or indirectly connected with or is necessary for the performance of one's military duties. (For AMEDD [Army Medical Command] officers, <u>this includes the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges</u>.)

AR 99 (emphasis added). Moreover, this is a verbatim recitation of Army Regulation 600-8-24, para. 4-2(b)(9), which constituted the regulatory basis upon which Plaintiff was notified of the

---

[2] In his application to the ABCMR, Plaintiff generally addressed the issue of whether the notification was adequate by alleging that it failed to contain information pertaining to his performance. AR 18-19. Plaintiff did not, however, allege in his application that he was unaware that his clinical practice credentials would be an issue considered by the board. Id.

proposed separation. (Compare AR 99 ¶ 1, with Army Reg. 600-8-24, para. 4-2(b)(9) submitted as Exhibit A to Df.'s opening brief). Thus, Plaintiff was not only informed that the "partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges" was the basis of the separation proceedings, he was also specifically informed of the regulatory provision that authorized separation from military service for the same.

Secondly, Plaintiff states that this notice was inadequate because it constituted his "entire notice," i.e., he implies that he should have been notified in some other fashion in addition to the September 24, 2004 letter. Pl.'s Br. p. 7. Plaintiff cites no authority for this proposition and, indeed, none exists. Moreover, Plaintiff's argument ignores the evidence contained in the administrative record pertaining to the redundancy of the notice. For example, Plaintiff not only received the September 24, 2004 notification, he received a similar notice from the President of the Board of Inquiry when his legal counsel's request for a postponement of the hearing was granted in February 2005 (AR 247-51), and again when the location of the hearing was changed in March 2005 (AR 253). Each of these notices informed him that "partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges" was the basis of the separation proceedings. Id.

Lastly, Plaintiff also apparently forgets that he acknowledged in his application to the ABCMR that the September 24, 2004 Notice of Separation informed him that "partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges" constituted that basis for his separation proceedings. (See Pl.'s application at AR 18).[3] Hence,

---

[3] As stated, *supra*, Plaintiff did not raise this issue before the ABCMR. Indeed, Plaintiff acknowledged in his application to the ABCMR that he was informed that his clinical practice privileges were at issue before the Board of Inquiry and argued that the Board of Inquiry

Plaintiff's argument that he was not informed of the basis of the separation proceedings is simply not credible.

### IV. Plaintiff mischaracterizes Colonel Fitzpatrick's request that he relinquish his privileges

Plaintiff baldly asserts that his commander improperly requested that he relinquish his privileges and that it "beggars belief that Plaintiff should be expelled from the Army for following the request of his Commander...." (Pl.'s Br. at 8). As explained thoroughly in Defendant's opening memo, a review of the time line of events demonstrates that Colonel Fitzpatrick's request was appropriate. Dr. Sangar had been granted supervised privileges by Walter Reed extending through May 5, 2004. After Madigan determined that Dr. Sangar had failed to successfully complete his refresher training and he returned to Walter Reed, he was asked to voluntarily relinquish the supervised clinical privileges that extended through May 5, 2004. Dr. Sangar failed to do so, and those privileges expired on May 5, 2004. On August 20, 2004, Dr. Sangar, through his attorney, was informed that he was no longer credentialed at Walter Reed, and he was advised of the procedure for requesting reinstatement of his privileges. AR 281. Dr. Sangar failed to request reinstatement of his clinical practice privileges. Consequently, on September 24, 2004, he was notified that elimination proceedings were being initiated. AR 227. Dr. Sangar wants to shift the blame for his failure to maintain his privileges

---

incorrectly found that his privileges were not limited. (AR 18 at fn. 8). Defendant's opening brief conclusively established that this assertion is simply untrue and that the ABCMR decision was well reasoned. Specifically, Dr. Sangar was granted supervised privileges by Walter Reed for the period May 6, 2003, through May 5, 2004. AR 6. Supervised privileges are by their very nature limited privileges. Moreover, those privileges expired on May 5, 2004; nearly five months before the initiation of the second elimination proceedings. Thus, Dr. Sangar was not in possession of any clinical practice privileges at Walter Reed at the time that the elimination action was initiated.

to Colonel Fitzpatrick. To the contrary, Plaintiff never "relinquished" his privileges; he let them expire. Further, he was informed of the procedure for requesting reinstatement of his privileges. He failed to avail himself of these procedures and was therefore processed for separation.

**V.     The ABCMR correctly concluded that Plaintiff was not subjected to "administrative double jeopardy"**

Without squarely confronting the arguments set forth in Defendant's opening memo, Plaintiff simply makes the conclusory assertion that army regulations do not permit a "do-over" that would allow Dr. Sangar to face a second elimination proceedings. (Pl.'s Br. at 12). Plaintiff's argument fails to confront the fact that the ABCMR addressed this issue, and properly rejected this claim. At the outset of its opinion, the ABCMR stated:

> Counsel states that the March 2005 board of inquiry improperly considered information and records that were presented to the December 2002 board of inquiry that had voted to retain the applicant, thereby making the applicant's discharge illegal and contrary to Army Regulation 600-8-24 (Officer Transfers and Discharges).

AR 3.

After a detailed recital of all of the facts in Dr. Sangar's case, the ABCMR specifically addressed his contention that he was subject to administrative double jeopardy. The board stated:

> In determining whether or not to retain an officer, a board of officers has to determine if, based on the totality of his or her record, it is in the best interest of the Army to retain that officer. The use of the same information as was used by the earlier board was appropriate since it was germane to whether or not the applicant was qualified to practice in his medical speciality.
>
> While the earlier board of officers voted to retain the applicant, that board did not give an unqualified retention decision. It recommended a qualified retention and that he be given a period of supervision to assess his suitability to be

AR 8.
      credentialed and to practice as a Nuclear Medicine Physician.

  Thus, under the applicable regulation, Dr. Sangar could be again considered for elimination after his retention in 2002. He was not the subject of "administrative double jeopardy," but was properly considered for elimination due to his loss of clinical practice privileges. The ABCMR addressed this contention in its opinion, and it was properly rejected. The ABCMR's decision on this matter should therefore be upheld.

  Notwithstanding the ABCMR's interpretation of the pertinent regulation and 2002 Board of Inquiry's findings, Plaintiff attempts to support his "double jeopardy" argument by claiming that "Defendant's entire material documentary offering [to the 2005 Board of Inquiry consisted of] pre-2002 allegations." Again, Plaintiff's assertion is simply not true. Plaintiff ignores Government Exhibits 21 and 22 (AR 280-81), dated June and August 2004, respectively. These exhibits, admitted into evidence at the Board of Inquiry, establish that Plaintiff was informed that he was no longer credentialed at Walter Reed and advised him of the procedure for requesting reinstatement of his privileges. Id. Plaintiff also ignores the testimonial evidence presented to the 2005 Board of Inquiry, including his own admissions, which established that he did not have privileges in 2005, and failed to request reinstatement of his clinical practice privileges. AR 214-24.

## VI  Defendant attempted to retrain Plaintiff

  In yet another attempt to mischaracterize the administrative record, Plaintiff asserts that "...Walter Reed refused to retrain or transfer the Plaintiff despite the 2002 Board of Inquiry

requiring such...." (Pl.'s Br. p. 2, fn. 2).[4] It is undisputed, however, that following the recommendation of the 2002 Board of Inquiry, Dr. Sangar was granted supervised privileges by Walter Reed for the period May 6, 2003, through May 5, 2004. AR 6. Dr. Sangar was then sent to Madigan for refresher training in Nuclear Medicine. In order to complete his refresher training, Madigan granted him regular privileges under supervision from September 23, 2003, to May 5, 2005. AR 214-24. Dr. Sangar then received ten weeks of refresher training, and Madigan determined that Dr. Sangar still could not practice independently. AR 214-24. The Army returned Dr. Sangar to Walter Reed and his clinical practice privileges expired on May 5, 2005. Dr. Sangar was informed of the procedure for requesting renewal of his clinical practice privileges, but he failed to make such a request, therefore elimination proceedings were initiated. AR 281.

## CONCLUSION

Plaintiff fails to state a claim for habeas or mandamus relief and therefore, these claims should be dismissed. Summary judgment should be granted to Defendant on Plaintiff's remaining claims. The ABCMR fully addressed Dr. Sangar's arguments, examined the relevant facts and articulated a satisfactory explanation for its action. As such, its decision was

---

[4] Plaintiff's allegation that Walter Reed's "refusal to reassign or retrain Plaintiff to another position was indisputably stupid, especially since that Command refused to assign available officers - such as Plaintiff - to supervise rodent eradications, renovations to dilapidated housing for wounded veterans, and other mundane duties which resulted in inexcusable and undeniable neglect of wounded soldiers...and the Commander [of Walter Reed] being fired...." (Pl.'s Br. p. 2, fn. 2) is specious. Plaintiff's references to the hardships experienced by wounded soldiers are not germane to any of his claims before this Court and his assertion that Defendant "refus[ed] to reassign or retrain" him is yet another misstatement of the administrative record, which undisputably establishes that Defendant sent Plaintiff to Madigan for retraining and, after Plaintiff's retraining was unsuccessful, offered him assignment to a position that did not include clinical duties, which he refused, in order for him to continue in the Army to reach retirement eligibility. AR 214-24.

reasonable, lawful, and should be upheld.

                                                    Respectfully submitted,

                                                    /s
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

                                                    /s
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

                                                    /s
STEVEN M. RANIERI
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895