UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VIJAY SANGAR, M.D.

    Plaintiff,

    v.

THE HONORABLE PETE GEREN,
Secretary of the Army,

    Defendant.

Civil Action No. 06-2015 (CKK)

**MEMORANDUM OPINION**
(March 4, 2008)

Plaintiff Vijay Sangar, a former Medical Corps Officer in the United States Army, brings this action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, against Pete Geren, in his capacity as Secretary of the Army (the "Secretary").[1]  On March 28, 2005, an Army Board of Inquiry recommended Dr. Sangar's separation from active service because he lost and failed to re-obtain his credentials to practice in his medical specialty.  The Army Board of Corrections for Military Records ("ABCMR") later denied Dr. Sangar's application for relief from that decision. Dr. Sangar has filed the instant action claiming that the ABCMR's denial of his application for relief was arbitrary, capricious, and otherwise in violation of the law.  The Parties have filed Cross-Motions for Summary Judgment on that issue.  The Secretary has also filed a Partial Motion to Dismiss because Dr. Sangar's Complaint purportedly invoked the Court's jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, and the Writ of Habeas Corpus, 28 U.S.C. § 2241.

---

[1]  Dr. Sangar initially brought this action against Francis J. Harvey, Secretary of the Army.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted Pete Geren as the Defendant, who became Secretary of the Army on July 16, 2007.

*See* Compl. ¶ 1.  Although it is unclear whether Dr. Sangar intended to assert claims under these

statutes, Dr. Sanger failed to respond to the Secretary's arguments explaining why those statutes

were inapplicable to the instant action.  *See* Def.'s Partial Mot. to Dismiss and Mot. for Summ. J.

at 4-7 (hereinafter "Def.'s Mot. for Summ. J.").  Accordingly, the Court shall deem any claims

asserted under those statutes to be abandoned and shall grant the Secretary's Partial Motion to

Dismiss as conceded.  As to the remaining claims subject to the Parties' Cross-Motions for

Summary Judgment, the Court has thoroughly reviewed the Parties' submissions, applicable case

law, statutory authority, Army Regulations, and the Administrative Record as a whole, and shall

deny Plaintiff's [4] Motion for Summary Judgment and grant [9] Defendant's Motion for

Summary Judgment, for the reasons that follow.

## I.  BACKGROUND

   *A.    Applicable Army Regulations*

   Officer transfers and discharges are governed by Chapter 4 of Army Regulation 600-8-24.

*See* Army Regulation 600-8-24, Ch. 4 at 1.[2]  That Regulation lists three non-exclusive conditions

that may result in an elimination action:  (1) substandard performance of duty; (2) misconduct,

moral or professional dereliction, or in the interest of national security; and (3) derogatory

information.  *Id.* at 4-2(a)-(c).  All three conditions include subsections listing specific conduct

contemplated by the Regulation.  For example, "misconduct, moral or professional dereliction, or

in the interest of national security," includes circumstances where an officer mismanages his or

her personal affairs to the discredit of the Army, *see id.* at 4-2(b)(2), or where an officer loses or

---

   [2] Army Regulation 600-8-24 is attached as Exhibit A to Defendant's Motion for
Summary Judgment.  The Court shall cite directly to the Regulation throughout this
Memorandum Opinion.

abandons a professional license that is necessary to the performance of his or her duties, *see id.* at 4-2(b)(9).  When an official initiates elimination proceedings against an officer, he must specify the reasons supporting the elimination by referencing at least one of these conditions.  *Id.* at 4-19.

An officer subject to an elimination proceeding is entitled to a fair and impartial hearing before a three-person Board of Inquiry.  *Id.* at 4-6(a).  At the hearing, "[t]he Government is responsible [for] establish[ing], by [a] preponderance of the evidence, that the officer has failed to maintain the standards desired for his or her grade and branch or that the officer's conduct has been prejudicial to national security."  *Id.  See also id.* at 4-11 ("the board will determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence").  The officer is entitled to appear in person with legal counsel and present evidence in his defense.  *Id.* at 4-11(f).  At the conclusion of the proceedings, the Board will either vote to retain the officer (with or without reassignment) or eliminate the officer.  *Id.* at 4-15(b)(2).  If the Board of Inquiry votes to eliminate the officer, the case is referred to a Board of Review.  *Id.* at 4-17(a).  If the Board of Review recommends elimination, the case is forwarded to the Secretary of the Army for a final determination.  *Id.* at 4-17(c)(2).

B.      *Factual Background*

Dr. Sangar was commissioned as an officer in the Medical Corps of the United States Army in 1988.[3]  Pl.'s Stmt. ¶ 1.  In 1994, Dr. Sangar was promoted to the rank of Lieutenant

---

[3] This Court strictly adheres to the text of Local Civil Rule 56.1 when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to the case).  Although discretionary in the text of the Local Civil Rule 56.1, in resolving the present summary judgment motion, this Court "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 56.1.  Thus, in most instances the Court shall cite to Plaintiff's Statement

Colonel, and in August 1995, he was assigned to Walter Reed Army Medical Center ("Walter Reed") as a Physician in Nuclear Medicine. Def.'s Stmt. ¶¶ 1-2. In 1997, Sangar was diagnosed with Chronic Inflammatory Demyelinating Polyneuropathy, a neurological disorder that impairs a person's cognitive and sensory functions. Pl.'s Stmt. ¶ 3; Def.'s Stmt. ¶ 4. On September 30, 1998, Dr. Sangar received an Officer Evaluation Report ("OER") that gave him a ranking of "Below Center of Mass" relative to his peers, and indicated that "[a]s a result of his significant medical condition, LTC Sangar's performance and potential as a leader, builder or motivator have not been demonstrated. Additionally, his technical skills and ability to execute plans have been impaired, likely as a result of this medical condition." Def.'s Stmt. ¶ 4; A.R. 132 (1997-1998 OER).

On February 5, 1999, Walter Reed suspended Dr. Sangar's clinical privileges based on "evaluations that demonstrated that [he] was not competent to perform clinical duties as a Nuclear Medicine Physician." Def.'s Stmt. ¶ 6; A.R. 273 (Letter from Yancy Phillips, Deputy Commander for Clinical Services). Following a hearing, Dr. Sangar's credentials were revoked on November 3, 1999. Def.'s Stmt. ¶ 6; A.R. 276. His 1999-2000 OER indicated that he "does not exhibit the fund of knowledge and image interpretation skills expected of a board-eligible nuclear medicine physician. This is particularly troublesome since he has had the benefit of an assignment at [Walter Reed], one of the strongest training programs in the country." A.R. 128 (1998-1999 OER). The OER recommended that Dr. Sangar not be retained in service. *Id.*

---

of Material Facts ("Pl.'s Stmt.") or Defendant's Statement of Material Facts ("Def.'s Stmt.") unless a statement is contradicted by the opposing Party. The Court shall also cite directly to the record, where appropriate, to provide additional information not covered in either of the Parties' Statements.

Having lost his credentials to practice medicine, the Army reassigned Dr. Sangar to the

Tumor Registry at Walter Reed beginning in 1999 where he was placed in an administrative

position and responsible for the abstraction of medical records. Def.'s Stmt. ¶ 7. Dr. Sangar's

1999-2000 OER indicated that his "performance as a nuclear physician for which he is being

paid cannot be evaluated since he has not worked in that area during this entire rating period . . .

He can only be rated in the role as a Tumor Registry Clerk, normally a [General Schedule 6 level

employee]." A.R. 126 (1999-2000 OER). The OER rated Dr. Sangar "Below Center of Mass"

relative to his peers and concluded that "the Army should not and cannot retain this officer." *Id.*

Dr. Sangar's 2000-2001 and 2001-2002 OERs echoed these sentiments. *See* A.R. 123-24 (2000-

2001 OER) ("the Army should not retain this officer as his clinical privileges to practice

medicine at Walter Reed have been revoked . . . Dr. Sangar's technical planning, and motivating

abilities are severely impaired due to his inability to practice medicine. Therefore, he has no

potential to continue in the US Army as a Medical Corps officer, since he has no privileges to

practice his specialty"); A.R. 121-22 (2001-2002 OER) (Dr. Sangar's "potential is severely

limited and I recommend that he not be retained").[4]

On March 26, 2002, the Army sent a notice to Dr. Sangar indicating that it had initiated

---

[4] There is information in the record suggesting that Dr. Sangar's medical condition was
not the cause of his below average performance reviews. *See*, *e.g.*, A.R. 174 (Physical
Evaluation Report dated Nov. 30, 1998) (finding that Dr. Sangar did "not have any functional
impairment which prevents [his] satisfactory performance of duty"); A.R. 490 (Physical
Evaluation Report dated February 8, 2002) (concluding that Dr. Sangar did not have functional
impairments preventing satisfactory performance of his duties). Although the Parties dispute the
extent to which Dr. Sangar's medical condition affected his job performance, the Court finds this
dispute to be immaterial to resolution of the Parties' Motions for Summary Judgment. *See* Pl.'s
Response to the Court dated March 3, 2008 at 1-2 (referring to A.R. 490 and the Secretary's
related assertions as "not relevant or material to the issue in this lawsuit").

elimination proceedings against him based on the "downward trend in [his] overall performance resulting in a consistent record of mediocre service and failure to properly perform assignments commensurate with [his] grade and experience." Pl.'s Mot. for Summ. J., Ex. 6 at 1 (Initiation of Elimination Proceedings Letter). The notice specifically referenced Army Regulations 600-8-24, 4-2(a)(1) and 4-2(a)(5), which authorize elimination based on "a downward trend in overall performance" and a "failure to properly perform assignments commensurate with an officer's grade and experience."

A Board of Inquiry was convened on December 16, 2002. *See* Pl.'s Mot. for Summ. J., Ex. 7 (Board of Inquiry Findings). The Board found that Dr. Sangar's

> substandard performance of duty . . . from July 97 thru Nov 99 is potentially attributable to [his] diagnosed [medical condition]. The two OERs covering the period Nov. 99 thru Nov 01 do not address a downward trend, but address the fact that he is not performing as a Nuclear Medicine Physician. Furthermore, there is disagreement among Nuclear Medicine Experts concerning his qualifications.

*Id.* at 5. Rather than recommend Dr. Sangar's elimination from the Army based on these findings, the Board recommended that Dr. Sangar "be retained in service with reassignment with a period of supervision to assess his suitability to be credential[ed] and practice as a Nuclear Medicine Physician." *Id.*

On May 16, 2003, Sangar was granted supervised privileges by Walter Reed for the period May 6, 2003, through May 5, 2004. Def.'s Stmt. ¶ 16. Plaintiff was thereafter sent to Madigan Army Medical Center ("Madigan") for a 12-week rotation designed to provide Dr. Sangar with training and comprehensive assessment of his abilities. Def.'s Stmt. ¶ 17; Pl.'s Mot. for Summ. J., Ex. 10 at 6 (Madigan Performance Assessment). Based on a review and recommendation by the Credentials Committee and the approval by the Commander of Madigan,

6

Dr. Sangar was granted supervised clinical privileges at Madigan from September 25, 2003 through May 5, 2005.  Pl.'s Stmt. ¶ 20.  Magidan prepared a final report evaluating Dr. Sangar's performance during this training period.  Pl.'s Stmt. ¶ 21.  The report stated that Dr. Sangar "is a pleasant physician who availed himself of the learning opportunities at [Madigan].  However . . . we do not feel that [he] can practice independently at this time."  Pl.'s Stmt. ¶ 21.  The report also stated that Dr. Sanger submitted multiple erroneous reports, that his knowledge of anatomy and current pharmaceuticals was weak, that he struggled while performing physical exams, and that he had difficulty dealing with the details of scan interpretation.  Def.'s Stmt. ¶ 17.

Dr. Sangar returned to Walter Reed following his training at Madigan and resumed his assignment in the Tumor Registry.  Pl.'s Stmt. ¶ 24.  Colonel Thomas Fitzpatrick, the Deputy Commander of Walter Reed Hospital, asked Dr. Sangar to voluntarily relinquish his clinical practice credentials after returning to Walter Reed from Madigan.  Pl.'s Stmt. ¶ 25.  Dr. Sangar did not voluntarily relinquish his credentials, and they expired on May 5, 2004.  A.R. 280 (Letter to Colonel Fitzpatrick); A.R. 281 (Letter from Colonel Fitzpatrick).  Dr. Sangar did not seek to have his credentials reinstated.  A.R. 218 (Board of Inquiry Testimony).

In June 2004, the Department of the Army Inspector General investigated the circumstances surrounding Dr. Sangar's 2002 Board of Inquiry.  Def.'s Stmt. ¶ 18.  The Inspector General found no credible evidence that the Board of Inquiry was improperly initiated or that it improperly failed to return Dr. Sanger to clinical practice.  *See* A.R. 372 (Inspector General Letter dated June 1, 2004).  The Inspector General also noted that "given [Dr. Sangar's] unsuccessful retraining at [Madigan], the decision to retain him on active duty appears questionable."  *Id.*  He recommended that the Army Surgeon General "consider whether a [Board

of Inquiry] should be re-convened to assess [Dr. Sangar's] suitability for continued duty

[because] [i]t does not appear to be in the best interest of the Army to continue the employment

of a medical doctor to perform what was reported to be General Schedule-7 level administrative

work as a Tumor Registration clerk." *Id.*

On September 23, 2004, Dr. Sangar was notified that the Army had initiated elimination

proceedings against him.  Pl.'s Stmt. ¶ 30.  In contrast to the initial proceedings that were based

on the "downward trend" in his performance and his failure to "properly perform assignments

commensurate with [his] grade and experience," Pl.'s Mot. for Summ. J., Ex. 6 at 1, these

elimination proceedings were initiated based on the limitations and subsequent loss of his

medical credentials:

> conduct or actions that result in the loss of a professional status, such as
> withdrawal, suspension or abandonment of professional license, endorsement, or
> certification that is directly or indirectly connected with or is necessary for the
> performance of one's military duties.  (For [medical officers], this includes the
> partial or complete suspension, limitations, withdrawal, or denial of clinical
> practice privileges).

Army Reg. 600-8-24, 4-2(b)(9); *See also* A.R. 227 (Initiation of Elimination Letter dated Sept.

23, 2004).

The Board of Inquiry convened March 28, 2005.  Def.'s Stmt. ¶ 20.  The Board

recommended Sangar's separation from the Army because

> after the loss of [his] credentials to practice Nuclear Medicine, [he] failed to
> perform to the standards expected of a Lieutenant Colonel in the United States
> Army.  This includes [his] lack of initiative to become recredentialed [sic], [his]
> apparent lack of insight in recognizing [his] clinical limitations and deficiencies
> and how to pursue correcting them since January 2004.  Without these credentials
> [he] is unable to perform the duties for which [he was] employed.

A.R. 223-24 (2005 Board of Inquiry Findings).

Because the Board recommended separation, the case was forwarded to a Board of Review.  Def.'s Stmt. ¶ 21.  On July 8, 2005, the Board of Review recommended separation.  *Id.* On July 11, 2005, the Secretary of the Army approved the recommendation.  *Id.*  Dr. Sangar was honorably discharged from the Army as of October 28, 2005.  *See* A.R. 185 (Discharge Form). Dr. Sangar' s Certificate of Release referenced the separation provision under which he was eliminated from service, titled "misconduct, moral or professional dereliction."  A.R. 185; Army Reg. 600-8-24, 4-2(b).

On October 16, 2005, Dr. Sangar filed an application for relief with the ABCMR.  Def.'s Stmt. ¶ 23.  His application requested that the ABCMR either reinstate him in service, or alternatively, remove all allegations of "misconduct" from his service and make him eligible for separation pay.  Def.'s Stmt. ¶ 23.  During the pendency of Dr. Sangar's application, his discharge orders were amended to allow him to collect "half separation pay," A.R. 194 (April 18, 2006 Notification from Walter Reed), although the reference to Army Regulation 600-8-24 and "misconduct" remained on his Discharge Certificate.  *See* A.R. 185 (Discharge Certificate).

On August 31, 2006, the ABCMR denied Dr. Sangar's application for relief, finding that he was properly eliminated because he did not possess full, regular clinical practice privileges, but was awarded only supervised privileges.  Def.'s Stmt. ¶ 25.  This lawsuit followed on November 28, 2006.

C.     *Procedural Background*

Dr. Sangar filed a Motion for Summary Judgment on March 5, 2007.  The Secretary filed a consolidated Motion to Dismiss, in part, Motion for Summary Judgment, and Opposition to Dr. Sangar's Motion for Summary Judgment on April 2, 2007.  Dr. Sangar filed a separate Reply on

April 27, 2007 and an Opposition on May 14, 2007.  The Secretary thereafter filed a Reply on

May 23, 2007.  The Court issued a Minute Order dated February 26, 2008, indicating that the

Administrative Record submitted to the Court was missing approximately 88 pages and

instructing the Secretary to either file the missing pages or alter its citations to conform with the

previously-filed record.  The Secretary complied with the Court's Minute Order on February 28,

2008, by submitting the remaining pages of the record.  Because Dr. Sangar had previously

objected to certain of the Secretary's facts in his Statement of Material Facts based solely on the

missing pages of the record, the Court permitted Dr. Sangar to submit a supplemental filing

indicating whether he disputed any portion of the Secretary's facts that had cited to non-existent

pages of the record.  Dr. Sangar filed this supplemental briefing on March 3, 2008.[5]

## II.  LEGAL STANDARD

### A.    The Administrative Procedure Act ("APA")

The ABCMR is vested with considerable discretion in determining whether to take

corrective action with respect to an applicant's record.  The Secretary, acting through the Board,

"may correct any military record of the Secretary's department when the Secretary considers it

necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  The Secretary's

denial of an application to the ABCMR is "a final agency action reviewable under the

Administrative Procedure Act" ("APA").  *Miller v. Lehman*, 801 F.2d 492, 496 (D.C. Cir. 1986).

Pursuant to the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

---

[5] The Court notes that Dr. Sangar's Supplemental Briefing objects to the Secretary's reliance on A.R. 490, a record associated with a 2002 Board proceeding.  The Court has not relied on this record to resolve the instant motions.  *See* footnote 4, *supra*.

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . .We may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. 29, 43 (1983) (internal citations and quotation marks omitted); *see also Cellco P'ship v. Fed. Commc'ns Comm'n*, 357 F.3d 88, 93-94 (D.C. Cir. 2004) (noting "arbitrary and capricious" review is "highly deferential . . . presum[ing] the validity of agency action . . . [which] must [be] affirm[ed] unless the Commission failed to consider relevant factors or made a clear error in judgment.").

Decisions of the ABCMR are afforded an even greater level of deference than civilian administrative agencies because the judiciary is reluctant to interfere with internal military personnel decisions. *See Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (applying an "unusually deferential application" of the APA standard to a decision of the Army Board for Correction of Military Records); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) ("perhaps only the most egregious decisions may be prevented under such a deferential standard of review"). Given this limited and deferential standard of review, the Court's inquiry in the instant case is a narrow one; the Court may only "determine whether the Secretary's decision making process [through the ABCMR] was deficient, not whether his decision was correct," *Kreis,* 866 F.2d at 1511, and the ABCMR's decision must remain undisturbed unless the Court finds it was "'arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law.'" *Miller*, 801 F.2d at 496 (quoting 5 U.S.C. § 706(2)(A)).

    *B.    Summary Judgment*

    Summary Judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

    Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is

12

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

## III. DISCUSSION

Dr. Sangar's Motion argues that the Army failed to follow its own regulations in three material respects: (1) Dr. Sangar was improperly discharged for failing to maintain clinical practice privileges, (2) Dr. Sangar was discharged even though the Army did not systematically record his shortcomings in OERs for years 2002, 2003, and 2004, and (3) Dr. Sanger was subjected to two Boards of Inquiry in violation of Army Regulations that prohibit administrative double jeopardy. *See* Pl.'s Mot. for Summ. J. at 14-16. Dr. Sangar also raises two additional arguments in his Opposition and Reply: (4) Dr. Sangar received inadequate notice related to the 2005 Board of Inquiry, *see* Pl.'s Opp'n at 6-11, and (5) the ABCMR failed to fully consider Dr. Sangar's arguments in his application for relief, *see* Pl.'s Reply at 23. The Court shall address

13

these arguments in turn, none of which have merit.[6]

      A.    *Discharging Dr. Sangar for Failing to Maintain Credentials*

Dr. Sangar was notified that the Amy had initiated elimination proceedings against him by letter dated September 24, 2004.  *See* A.R. 227 (Notice of Elimination Proceedings).  The letter explained that Dr. Sanger was required to show cause for retention on active duty for "conduct or actions that result[ed] in the loss of a professional status, such as withdrawal, suspension or abandonment of [a] professional license, endorsement, or certification . . . this includes the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges."[7]  *Id.*  Dr. Sanger first argues that "there was simply no instance subsequent to the 2002 Board of Inquiry where the Plaintiff's clinical practice credentials were suspended, limited, withdrawn, or denied."  Pl.'s Mot. for Summ. J. at 16.  The administrative record belies that argument.

Dr. Sangar's credentials were suspended on February 5, 1999, and revoked on November 3, 1999.  *See* A.R. 273 (Letter from Yancy Phillips, Deputy Commander for Clinical Services); A.R. 276 (Letter from Michael Dunn, Commander of Walter Reed).  Following the 2002 Board of Inquiry, Dr. Sangar was granted supervised privileges (i.e. limited privileges) by Walter Reed running through May 5, 2004, and also received limited credentials at Madigan for purposes of

---

[6] The Court notes that it is, of course, procedurally improper for Dr. Sangar to have raised new arguments in his Opposition and Reply that he failed to raise in his Motion.  *See Corson v. Gruman Co. v. Nat'l Labor Relations Bd.*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990) (requiring parties to raise all of their arguments in their opening briefs "to prevent sandbagging").  Nevertheless, the Court shall exercise its discretion to consider these two additional arguments because the Secretary had the opportunity to respond and fully brief them in his Reply.

[7] This language matches the text of Army Regulation 600-8-24, 4-2(b)(9).

his re-training program.  *See* A.R. 6 (ABCMR Findings);  A.R. 461 (Madigan Notification of

Privileging Status).[8]  After Madigan determined that Dr. Sangar could not practice independently,

he returned to Walter Reed where he was asked to voluntarily relinquish his credentials.  *See*

A.R. 218 (Board of Inquiry Testimony).  Dr. Sangar failed to do so, and his credentials expired

on May 5, 2004.  Although Colonel Fitzpatrick explained to Dr. Sangar, through his attorney,

how to seek reinstatement for his privileges, Dr. Sangar failed to apply for their reinstatement.

*See* A.R. 281 (Letter from Colonel Fitzpatrick); A.R. 218 (Board of Inquiry Testimony).[9]

As this record makes clear, Dr. Sanger's privileges were suspended, revoked, restored

with limitations, and then lost entirely.  The ABCMR specifically recognized that Dr. Sangar's

privileges had been limited and were insufficient to allow him to practice in his specialty.  *See*

A.R. 9 (ABCMR Findings) ("The records show that the privileges granted to [Dr. Sangar] by

Madigan Army Medical Center were 'regular privileges under supervision,' not full regular

---

[8] A.R. 461 was originally missing from the Administrative Record filed by the Secretary in this action (but has subsequently been filed), and is the only page associated with the missing portion of the record that the Court has relied on for purposes of the instant motions.  Dr. Sangar does not object to the Secretary's factual statement relying on A.R. 461, *see* Def.'s Stmt. ¶ 17, but argues that support for the statement was reflected in the documents filed by Dr. Sangar.  *See* Pl.'s Response to the Court's Order at 1 n.1 ("Defendant's proffered fact 17 was unsupported by the Administrative Record, but was reflected in the documents filed by Plaintiff with the ABCMR").

[9] Dr. Sanger repeatedly implies that he was duped into relinquishing his medical credentials by Colonel Fitzgerald who then sought to have Dr. Sangar eliminated because of his failure to maintain credentials.  *See* Pl.'s Mot. for Summ. J. at 14 ("Plaintiff's [C]ommander specifically solicited Plaintiff [to] relinquish any clinical practice privileges, but then the same Commander sought the discharge of Plaintiff for the 'misconduct' of not maintaining clinical practice privileges"); Pl.'s Opp'n at 8 ("it beggars belief that Plaintiff should be expelled from the Army for following the request of his Commander, the same Commander who then seeks to discharge Plaintiff on the grounds that Plaintiff followed his request").  Dr. Sanger's implications are disingenuous, as he not only failed to relinquish his credentials as requested by Colonel Fitzgerald, but he also failed to apply for their reinstatement once they had expired.

privileges and [Walter Reed] granted him only <u>supervised</u> clinical privileges.") (emphasis in original); *id.* ("Without a granting of full unsupervised privileges to practice as a Nuclear Medicine Physician [Dr. Sangar] does not meet the requirement of being fully qualified in his designated specialty, a requirement for retention eligibility.").

Dr. Sangar also argues, apparently in the alternative, that even if he lost his clinical privileges, "Plaintiff was simply not required to maintain clinical practice credentials." Pl.'s Mot. for Summ. J. at 17. According to Dr. Sangar, the Army acted improperly by eliminating him for failing to maintain medical credentials that were not required to perform his work as a Tumor Registry Clerk. *See* Pl.'s Mot. for Summ. J. at 17; Pl.'s Reply at 21. In response, the Army contends that "Dr. Sangar was a medical officer, and while the Army placed him in an administrative position following the loss of his clinical practice privileges, that [did] not negate the fact that he was required to possess clinical practice privileges to perform the duties for which he was being employed." Def.'s Mot. for Summ. J. at 21. The ABCMR agreed with the Army, and the Court finds no error in the ABCMR's reasoning.

After Dr. Sangar initially lost his credentials to practice medicine, the Army reassigned him to an administrative level position and attempted to retrain him. Nevertheless, Dr. Sangar's superior officers did not view that position as suitable for someone of Dr. Sangar's rank and pay grade. *See, e.g.*, A.R. 126 (OER 1999-2000) ("performance as a nuclear physician for which he is being paid cannot be evaluated since he has not worked in that area during this entire rating period . . . He can only be rated in the role as a Tumor Registry Clerk, normally a [General Schedule 6 level employee]"); A.R. 123-24 (OER 2000-2001) ("the Army should not retain this officer as his clinical privileges to practice medicine at Walter Reed have been revoked . . .

Therefore, he has no potential to continue in the US Army as a Medial Corps officer, since he has no privileges to practice his specialty"); A.R. 217 ("[i]t is not a normal trend for a provider to wait three years before applying for privileges . . . [Dr. Sangar] is still receiving physician's pay"); A.R. 218 (Board of Inquiry Testimony) ("I offered him several options. I suggested that he leave the military and receive additional training. I also suggested that he accept a position that did not require him to perform clinical duties until he reached retirement age. He refused. I am not comfortable placing [Dr. Sangar] in another medical position within the hospital . . . I could not even put him in general medicine.").

Dr. Sangar points to no authority, and the Court is aware of none, that would require the Army to continue Dr. Sangar's employment in an administrative position even though he held the rank and pay grade of a medical officer who was expected to practice Nuclear Medicine. The ABCMR specifically found that the Army was not required to keep Dr. Sangar in active service having "lost his credentials to practice Nuclear Medicine," and without such credentials, "he was unable to perform the duties for which he was employed." A.R. 7 (ABCMR Findings). The ABCMR also found that "[w]ithout a granting of full unsupervised privileges to practice as a Nuclear Medicine Physician[,] [Dr. Sangar] does not meet the requirement of being fully qualified in his designated specialty, a requirement for retention eligibility." A.R. 9 (ABCMR Findings). Thus, contrary to Dr. Sangar's argument that the Army improperly discharged him for lacking credentials unnecessary to hold an administrative position, the Court finds that the ABCMR did not err by concluding that Dr. Sangar was properly eliminated for failing to hold the credentials necessary to practice in his medical speciality, commensurate with his rank and pay grade. Moreover, given the deference owed to the decisions of the ABCMR by this Court, *see*

*Cone*, 223 F.3d at 793 (requiring an unusually high level of deference to ABCMR decisions), the Court finds that the ABCMR's findings and conclusions concerning Dr. Sangar's credentials were not arbitrary, capricious, or otherwise not in accordance with the law.

> B.    *Dr. Sangar's Officer Evaluation Reports*

The Parties do not dispute that the Army should have, but did not, complete OERs for Dr. Sangar for the years 2002-2004. *See* Pl.'s Mot. for Summ. J. at 18-19; Def.'s Mot. for Summ. J. at 21-22. According to Dr. Sangar, if the Army had prepared OERs for those years, "the record would show that he performed his non-clinical duties at the Walter Reed Tumor Registry in an acceptable manner." Pl.'s Mot. for Summ. J. at 18. Because "[t]he failure to provide a rated officer with a proper OER casts legal doubt over the validity of a separation premised upon misconduct or ineffective performance of duty," Dr. Sangar argues that the lack of OERs prevented him from being able to "defend himself by showing exactly what his proper duties were and that he carried them out." *Id.* at 19.

Dr. Sangar's argument misses the mark. The 2005 Board of Inquiry recommended his elimination from service because he failed to possess the clinical practice privileges necessary to perform the duties required of an officer specializing in Nuclear Medicine – not because of ineffective performance as a Tumor Registry Clerk. *See* 223-24 (Board of Inquiry Findings) (finding that Dr. Sangar should be separated from active service because of his "lack of initiative to become recredentialed [sic], [his] apparent lack of insight in recognizing [his] clinical limitations and deficiencies and how to pursue correcting them since January 2004. Without these credentials [he] is unable to perform the duties for which [he was] employed"). Because his elimination was not based on ineffectiveness, the OERs for the 2002-2004 period could not

have had any bearing, one way or the other, on the Board of Inquiry's findings. As the ABCMR explained in its decision, "[w]hile the OERs should have been completed and been available to the board of inquiry, the fact that they were not does not invalidate the findings of the board that the applicant was not qualified for retention in his medical speciality based on the preponderance of evidence." A.R. 9.

Moreover, Army Regulation 600-8-24 does not require the Army to rely on an officer's OERs as the basis for elimination, but rather, requires that the government establish by a preponderance of the evidence (without specifying the source of the evidence) that an officer has failed to maintain the standards desired of his or her grade and branch as set forth in the notice of elimination.[10] *See* Army Reg. 600-8-24, 4-6(a). Dr. Sangar's reliance on *Godwin v. United States* for support is unpersuasive. In *Godwin*, an officer who had not been selected for a promotion brought suit arguing that one of his OERs was unavailable to the board when it was deciding whether to grant him a promotion. 338 F.3d 1374, 1376 (Fed. Cir. 2003). The court found that Godwin's complaint should not have been dismissed by the lower court because he had plead sufficient facts suggesting "a nexus between the missing OER . . . and the ultimate decision of his non-selection for promotion." *Id.* at 1381. Unlike that case, Dr. Sangar's elimination for failing to possess necessary medical credentials bears no relationship to his missing OERs for the years 2002-2004 (which would have detailed his job performance at the Tumor Registry, but not provided information otherwise unavailable concerning the status of his

---

[10] The Secretary correctly identifies other grounds for elimination under Regulation 600-8-24, 4-2(b) that would not require review of an officer's OERs, such as drug addiction or indebtedness. *See* Def.'s Mot. for Summ. J. at 22. Plaintiff failed to respond to this argument in his Reply.

medical credentials). Accordingly, the Court finds that the ABCMR's findings concerning Dr.

Sangar's missing OERs were not arbitrary, capricious, or otherwise not in accordance with the

law.

      *C.    Administrative Double Jeopardy*

      Pursuant to Army Regulation 600-8-24, 4-4(b), an officer cannot be "considered for

elimination . . . because of conduct that has been the subject of administrative elimination

proceedings that resulted in a final determination that the officer should be retained in Service."

There is no dispute that Dr. Sangar was subjected to a Board of Inquiry in 2002 and again in

2005. Dr. Sangar argues that he was subjected to "administrative double jeopardy"

because"almost all" of the documents and testimony considered by the 2005 Board of Inquiry

concerned conduct occurring prior to the 2002 Board of Inquiry and "[t]he government failed to

offer any testimony or documentary exhibits whatsoever which demonstrated poor performance

by the Plaintiff in his actual assigned duty as a Medical Abstraction Physician . . . ." *See* Pl.'s

Mot. for Summ. J. at 20. That argument lacks merit.

      The two Boards of Inquiry concerned different grounds for elimination. On March 26,

2002, Dr. Sangar was sent notice that elimination proceedings had been initiated based on a

"downward trend in [his] overall performance resulting in a consistent record of mediocre service

and failure to properly perform assignments commensurate with [his] grade and experience."

Pl.'s Mot. for Summ. J., Ex. 6 at 1 (Initiation of Elimination Letter dated Mar. 26, 2002) (citing

Army Regulations 600-8-24, 4-2(b)(1) and 4-2(b)(5)). The 2005 proceedings were initiated

based on "conduct or actions that result in the loss of a professional status, such as withdrawal,

suspension or abandonment of professional license, endorsement, or certification that is directly

or indirectly connected with or is necessary for the performance of one's military duties . . .

[including] the partial or complete suspension, limitations, withdrawal, or denial of clinical

practice privileges)." A.R. 227 (Initiation of Elimination Letter dated Sept. 23, 2004) (citing

Army Reg. 600-8-24, 4-2(b)(9)).

While the Second Board of Inquiry reviewed evidence of Dr. Sangar's performance that

was also considered in 2002, that was permissible under Army Regulation 600-8-24:

> The grounds for elimination in the earlier case may be joined with new grounds in
> the later case, provided the earlier elimination proceedings [did] not include a
> factual determination specifically absolving the member of the allegations then
> under consideration.  If the grounds for elimination in the earlier proceedings are
> joined, the additional grounds considered in the subsequent proceedings need not
> independently justify the member's discharge but must be sufficiently serious to
> raise a substantial question as to the member's potential for further useful military
> service.

Army Reg. 600-8-24, 4-4(c)(4).  As the ABCMR explained, the 2005 Board of Inquiry examined

Dr. Sangar's ability to practice in his medical speciality and his inability to obtain the necessary

medical credentials (even after his training at Madigan), and concluded that Dr. Sangar should be

eliminated from active service.  *See* A.R. 8 ("[t]he use of the same information as was used by

the earlier board was appropriate since it was germane to whether or not the applicant was

qualified to practice in his medical speciality").[11]

Moreover, Dr. Sangar's arguments concerning his performance in the Tumor Registry are

---

[11] The Court notes that, while Dr. Sangar is correct that some of the information before
the 2005 Board was the same as that submitted to the 2002 Board, there were clearly documents
and other testimony concerning Dr. Sangar's credentials that post-dated the 2002 Board of
Inquiry.  *See* A.R. 218 (testimony concerning 12-week evaluation program at Madigan and loss
of credentials); A.R. 219 (testimony concerning Dr. Sangar's work in 2003 and 2004); A.R. 220
(testimony concerning reinstatement of Dr. Sangar's credentials in April 2003); A.R. 223
(findings by the Board concerning Dr. Sangar's loss of credentials and failure to seek their
reinstatement in January 2004).

immaterial, as he was eliminated for failing to maintain the necessary credentials to work in his medical speciality, not for poor performance in an administrative position. Accordingly, the Court finds that the ABCMR's decision that the 2005 Board of Inquiry did not improperly review evidence that pre-dated the 2002 Board of Inquiry was not arbitrary, capricious, or otherwise not in accordance with the law.

### D.    Notice Concerning the 2005 Board of Inquiry

In his Opposition to the Secretary's Motion for Summary Judgment, Dr. Sangar argues that "Plaintiff was never put on notice that the issue of whether or not he possessed–or even needed–clinical practice credentials would be at issue at the [Board of Inquiry]." Pl.'s Opp'n at 7. Although Dr. Sangar failed to raise this issue in his ABCMR application for relief or in his Motion for Summary Judgment in the present action, the argument is meritless.

Dr. Sangar received notice that the Army had initiated elimination proceedings in a letter dated September 24, 2004. *See* A.R. 227 (Initiation of Elimination Proceedings Letter). The notice specifically cited and quoted the Army Regulation authorizing an officer's elimination based on "conduct or actions that result in the loss of a professional status, such as withdrawal, suspension or abandonment of professional licences[s] . . . includ[ing] the partial or complete suspension, limitations, withdrawal, or denial of clinical practice privileges." *Id.* (citing and quoting Army Reg. 600-8-24(b)(9).[12] This notice comports with applicable Army Regulations that require notice to be sent to the officer along with an explanation referencing one of the elimination conditions. *See* Army Reg. 600-8-24, 4-19 (requiring a notice to advise the office of

---

[12] Dr. Sangar also acknowledged this language from Army Regulation 600-8-24 in the application for relief he submitted to the ABCMR. *See* A.R. 18 (Dr. Sangar's application for relief).

the reasons supporting the elimination by reference to one of the conditions listed in 4-2).

Dr. Sangar argues that the alleged lack of notice prevented him from "call[ing] witnesses who would have testified that his permanent assignment as a Medical Abstraction Physician did not require clinical practice credentials." Pl.'s Opp'n at 8.  He also argues that the notice referenced Madigan, and there was a lack of testimony pertaining to his performance at Madigan. *See also* Pl.'s Reply at 19.  These arguments are immaterial for the reasons discussed in section III.A, *supra*.  The issue before the Board was not whether Dr. Sangar needed clinical privileges to work in the Tumor Registry, but whether he needed them to perform as a Nuclear Medicine Physician.  The ABCMR emphasized this point in its findings and conclusions.  *See* A.R. 8-9 (explaining that the 2002 Board of Inquiry "recommended a qualified retention and that [Dr. Sangar] be given a period of supervision to assess his suitability to be credentialed and to practice as a Nuclear Medicine Physician . . . Without a granting of full unsupervised privileges to practice as a Nuclear Medicine Physiicna he does not meet the requirement of being fully qualified in his designated speciality, a requirement for retention eligibility.").  Accordingly, Dr. Sangar's arguments concerning an alleged lack of notice received in connection with the 2005 Board of Inquiry are unpersuasive and immaterial.

E.     *ABCMR's Explanation of Decision*

Dr. Sangar's final argument is that the ABCMR failed to consider three arguments raised in his application for relief.  *See* Pl.'s Reply at 22 ("the AMCBR brushed off the legal arguments advanced by the Plaintiff").  Upon reviewing the ABCMR's findings and conclusions, it appears all three arguments identified by Dr. Sangar were considered and properly rejected by the ABCMR.

First, Dr. Sangar alleges that the ABCMR failed to address his argument that "a physician such as Plaintiff that is assigned to an administrative job is not required to possess clinical practice privileges." Pl.'s Reply at 23. This is simply a repackaging of Dr. Sangar's earlier arguments addressed in Section III.A., *supra*. The ABCMR found that the Army was not required to retain Dr. Sangar in active service having "lost his credentials to practice Nuclear Medicine," and without such credentials, "he was unable to perform the duties for which he was employed." A.R. 7 (ABCMR Findings). The ABCMR also found that "[w]ithout a granting of full unsupervised privileges to practice as a Nuclear Medicine Physician[,] [Dr. Sangar] does not meet the requirement of being fully qualified in his designated specialty, a requirement for retention eligibility." A.R. 9 (ABCMR Findings).

Second, Dr. Sangar alleges that the ABCMR "failed to address the 'Administrative Double Jeopardy' argument which Plaintiff set forth with exacting clarity in his application to the ABCMR and his Motion for Summary Judgment." Pl.'s Reply at 23. Upon review, the ABCMR did address this argument, specifically finding that "[t]he use of the same information as was used by the earlier board was appropriate since it was germane to whether or not the applicant was qualified to practice in his medical speciality." A.R. 8 (ABCMR Findings).

Third, Dr. Sangar alleges that "the Army's own explicit regulations require <u>written</u> evidence by which to judge an officer's alleged inefficiencies . . . . The ABCMR decision was again silent." Pl.'s Reply at 23 (emphasis in original) (citing Army Regulation 600-8-24, 4-1(b)).[13] Although Dr. Sangar does not elaborate on the meaning of this allegation, it appears to

---

[13] Although Dr. Sangar actually cites paragraph "9-1(b)" in his Reply, it appears that he meant to cite "4-1(b)," the regulation requiring an officer's ineffectiveness to be recorded in documents and stating that "[r]ecommendations for elimination action[s] will not be based on

be a reference to his 2002-2004 OERs that were unavailable for the 2005 Board of Inquiry to consider.  The issue concerning the missing OERs were, in fact, addressed by the ABCMR.  *See* A.R. 9 ("While [Dr. Sangar's] OERs should have been completed and been available to the board of inquiry, the fact that they were not does not invalidate the findings of the board that the applicant was not qualified for retention in his medical speciality based on the preponderance of evidence.").  Accordingly, Dr. Sangar's contention that the ABCMR failed to consider this argument is also meritless.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall deny Plaintiff's [4] Motion for Summary Judgment and grant [9] Defendant's Partial Motion to Dismiss and Motion for Summary Judgment.  This case shall be dismissed in its entirety.  An appropriate Order accompanies this Memorandum Opinion.

Date:    March 4, 2008

　　　　　　　　　　　　　　　　　　　　　　_/s/_____
　　　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

generalities and vague impressions."

25